JOHN O'NEIL *vs.* THOMAS O'LEARY.

WILLIAM EARLEY *vs.* SAME.

Suffolk.    March 19, 20, 1895. — October 17, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ

*Personal Injuries — Master and Servant — Negligence — Employers'
Liability Act.*

In an action for personal injuries occasioned to the plaintiff, while in the defendant's employ, by an explosion of dynamite used in blasting rock, it appeared that the defendant was engaged in blasting a ledge of rock on his premises by means of dynamite exploded by electricity in deep holes drilled by a steam drill in the top of the ledge, and employed A. as superintendent of the blasting; and that B. had charge of the work at the base of the ledge, which consisted of breaking up the large pieces of rock into small stones, either by hand drilling and blasts of powder or by sledge-hammers, and carting them away. No claim was made at the time that A. was incompetent. B. admitted, on cross-examination, that he had never done any wiring of holes which were loaded with dynamite, and had not had charge of deep drilling and dynamite blasting with electricity, but also testified that he knew how it ought to be done. *Held*, that it was error to refuse to instruct the jury that there was "no evidence of negligence on the part of the defendant in the selection and employment of a superintendent, or of workmen employed on this work, which contributed to cause the accident."

At the trial of two actions for personal injuries occasioned to the plaintiffs respectively, while in the defendant's employ, by an explosion of dynamite used in blasting rock, it appeared that the defendant was engaged in blasting a ledge of rock on his premises by means of dynamite exploded by electricity in deep holes drilled by a steam drill in the top of the ledge, and employed A. as superintendent of the blasting. The evidence showed that the defendant requested A. and one of the plaintiffs to begin the work of blasting at five o'clock in the morning; that he sent A., although the latter was unwilling to go, to sharpen drills when all concerned supposed that the charge in the hole where the explosion occurred, and from which A. and the plaintiff were removing the tamping, had been exploded; and that he sent the other plaintiff to assist in manipulating the churn drill which was used in removing the tamping, and which was too heavy for one man to work alone, and while they were so engaged the accident happened. *Held*, that it was error to refuse to instruct the jury that there

was "no evidence of personal negligence on the part of the defendant in reference to the accident, which contributed to cause it."

Evidence that a person, employed by another as superintendent of the blasting of a ledge of rock by means of dynamite exploded in drill holes by electricity, worked with his own hands in attending to the fire under the steam boiler, in sharpening all the tools used by the workmen, in charging the drill holes and in clearing them out, and in other acts of manual labor, which occupied the most of his time, will not warrant a finding that his "principal duty is that of superintendence," within the meaning of the employers' liability act, St. 1887, c. 270. § 1, cl. 2.

TWO ACTIONS OF TORT, for personal injuries occasioned to the plaintiffs respectively, while in the defendant's employ; the declaration in each case containing counts under the employers' liability act, St. 1887, c. 270, and also at common law. The cases were tried together in the Superior Court, before *Richardson,* J., and it appeared that the defendant was engaged in blasting a ledge of rock on his premises by means of dynamite exploded by electricity in deep holes drilled by a steam drill in the top of the ledge, and employed one McDonald as superintendent of the blasting; that one Lyons had charge of the work at the base of the ledge, which consisted of breaking up the large pieces of rock into small stones, either by hand drilling and blasts of powder or by sledge-hammers, loading them on teams, and carting them away; and that, while the plaintiffs were engaged, by means of a churn drill, in removing the tamping from one of the deep holes, an explosion of dynamite occurred therein, and caused the injuries complained of.

The jury returned a verdict for the plaintiff in each case; and the defendant alleged exceptions, which appear in the opinion.

The case was argued at the bar in March, 1895, and afterwards was submitted on the briefs to all the judges.

*R. M. Morse,* (*C. G. Keyes & C. D. Keyes* with him,) for the defendant.

*W. H. Brown,* for O'Neil.

*F. N. Nay,* for Earley.

LATHROP, J. The first request for instructions we pass for the present, as it depends in part upon other requests which we shall consider at length.*

---

* The instructions requested and refused were as follows: "1. There is no evidence which will authorize a verdict for the plaintiff in either case. . . .

The third request, we are of opinion, should have been given. An examination of the evidence shows no negligence on the part of the defendant in the selection or employment of a superintendent or workmen which contributed to the accident. There was no evidence of negligence in employing McDonald, and it is now conceded that no claim was made at the trial that he was incompetent. As to the employment of Lyons there was no evidence that he was incompetent to have charge of any part of the work. The testimony as to his competency comes from the cross-examination of himself, in which, while he admitted that he had never done any wiring of holes which were loaded with dynamite, and had not had charge of deep drilling and dynamite blasting with electricity, he also testified that he knew how it ought to be done.

The fourth request should also have been given. We find no evidence of personal negligence on the part of the defendant in reference to the accident. It was not negligence to request McDonald and Earley to begin the work of blasting at five o'clock in the morning, nor to send McDonald to sharpen drills when all concerned supposed that the charge in the hole, from which he and Earley were removing the tamping had been exploded, the defendant having no knowledge which should have led him to suppose that it was possible that the hole had not been fired; nor was it negligent for him to send O'Neil to assist in manipulating the churn drill, which was too heavy for one man to work alone. In these matters he acted as any prudent man would act under the circumstances, there being nothing to indicate to him that any explosion could be caused by the removal of the tamping. McDonald's unwillingness to leave the work of removing the tamping which he was engaged on with Earley when the defendant asked him to sharpen drills does not appear to have

---

3. There is no evidence of negligence on the part of the defendant in the selection and employment of a superintendent, or of workmen employed on this work, which contributed to cause the accident. 4. There is no evidence of personal negligence on the part of the defendant in reference to the accident which contributed to cause it. 5. There is no evidence that McDonald was employed as a superintendent, whose sole or principal duty was that of superintendence, so that the defendant can be held liable for the negligence of McDonald."

been for any reason except to get the special work of blasting these two holes finished as soon as possible, and there is nothing in the evidence to indicate that the defendant supposed, or ought to have known, that McDonald's remaining at the work of removing the tamping was of importance to the safety of any one.

While the fifth request does not follow the words of the statute, the question which has been argued, and which was doubtless intended to be covered by it, is covered by the first request, and we proceed to consider whether there was any evidence which would warrant the jury in finding that McDonald was a person in the service of the defendant intrusted with and exercising superintendence, whose sole or principal duty was that of superintendence, within the meaning of these words in the St. of 1887, c. 270, § 1, cl. 2. That he was intrusted with, and was exercising the duty of, superintending the blasting, might properly have been found by the jury. It clearly was not his sole duty. Can it be said that it was his principal duty? On the evidence in the case put in by the plaintiffs, it is clear that he worked with his own hands in attending to the fire under the steam boiler, in sharpening all the tools used by the workmen, in charging the drill holes and in clearing them out, and in other acts of manual labor. One of the witnesses testified : " Sharpening the tools occupied part of his time, and he attended to the fire to make the steam. He spent most of the time in sharpening the tools and keeping up steam. Whenever the steam drill was going he had to keep the steel sharp ; and if the drill would not be running he would have leisure to come out on the ledge and talk, and see what was necessary to be done ; but most of the time he was working, sharpening tools, keeping up steam, and coming out to place these holes." There was also other evidence that his manual labor occupied most of his time, and there was no contradiction as to this.

In a sense it is undoubtedly true that superintendence is more important than manual labor, and so, if superintendence is intrusted to a man who also works with his hands, it may be said that his principal duty is that of superintendence. But if the statute had intended that every person exercising superintendence should not be considered a fellow servant with a person injured, there would have been no need of the words " whose sole

or principal duty is that of superintendence." These words must have a reasonable interpretation given to them; and a majority of the court is of opinion that it cannot be said of a person who works at manual labor to the extent shown in this case that his principal duty is that of superintendence. See *Cashman* v. *Chase*, 156 Mass. 342; *Shepard* v. *Boston & Maine Railroad*, 158 Mass. 174; *O'Brien* v. *Rideout*, 161 Mass. 170; *Dowd* v. *Boston & Albany Railroad*, 162 Mass. 185.

In *Malcolm* v. *Fuller*, 152 Mass. 160, the evidence was conflicting as to the work done by the alleged superintendent, and the case therefore was left to the jury. In the cases at bar, we have considered only the evidence for the plaintiffs.

If the evidence in the case shows anything more than a pure accident, it shows negligence on the part of McDonald, who, as his principal duty was not that of superintendence, was but a fellow workman with the plaintiffs.

On these considerations it follows that the defendant was entitled to have the first instruction requested given, which was in substance that the jury would not be authorized to find a verdict for the plaintiff in either case. It is unnecessary to consider the other instructions requested.

*Exceptions sustained.*