CHARLES A. KENNESON *vs.* INHABITANTS OF FRAMINGHAM.

Middlesex.    March 10, 1897. — April 13, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Construction of Statute relating to Contagious Diseases among
Domestic Animals.*

The meaning of § 27 of St. 1894, c. 491, entitled "An Act to codify and consoli-
date the laws relating to contagious diseases among domestic animals," is
that the expense of isolation of animals upon the owner's premises is to be
borne by himself without payment or reimbursement, and that the expense
which is to be paid by the city or town, and in part to be reimbursed by the
State, is only that of keeping animals isolated upon premises other than those
of the owner or person in whose possession they were found when the order of
isolation was made.

CONTRACT, to recover a reasonable compensation for taking
and appropriating certain property of the plaintiff, for establish-
ing and maintaining a quarantine on the plaintiff's premises, by
order of a member of the board of cattle commissioners under
St. 1894, c. 491, entitled "An Act to codify and consolidate
the laws relating to contagious diseases among domestic ani-
mals," and acts in amendment thereof, and also for the expense
of quarantine in attending and feeding said cattle, and shipping
the same from the town by order of the commissioner.

The defendant demurred to the declaration, assigning as ground
therefor that it did not set forth a legal cause of action. The
Superior Court sustained the demurrer; and the plaintiff ap-
pealed to this court.

*J. A. McGeough,* for the plaintiff.

*L. H. Wakefield & W. Adams,* for the defendant.

BARKER, J. Whether the demurrer was rightly sustained
depends upon the meaning of St. 1894, c. 491, which the plain-
tiff contends gives him a right of action. He alleges, in sub-
stance, that his cattle were quarantined in his own barn in
Framingham by order of a member of the board of cattle com-
missioners, from January 19, 1895, to June 16, 1895, when by
further order the plaintiff removed them, except two, which had
died, and shipped them on the cars. He seeks to recover of the

town the sum of $2,360.38, for the expenses of the quarantine and of putting the cattle on the cars. The amount is made up of a charge of sixty-two cents a day for each beast, $2,014.38; of a man for five months, $225; use of barn, $100; and expense of shipping the cattle, $21.

The section upon which the plaintiff relies is this: " Section 27. When any animals are quarantined, collected, or isolated under the provisions of this act, upon the premises of the owner or of the person in possession thereof at the time such quarantine is imposed, the expense thereof shall be paid by such owner or person in 'possession, and when taken from such premises such expense shall be paid by the city or town wherein the animal is kept, and four fifths of such payment, when certified by the treasurer of the city or town, and approved by the board of cattle commissioners, shall be refunded by the Commonwealth."

The plaintiff contends that if animals quarantined upon the premises of the owner at his own expense are taken away in pursuance of law, the expense theretofore incurred is to be paid by the town. It is true that, as the law stood when the cattle were first put in quarantine, there was no provision by which the expense could be reimbursed, unless the construction for which the plaintiff contends is correct. But we think it was the intention of the statute to put upon the owner without reimbursement the expense of keeping isolated or quarantined his own cattle, which were diseased or suspected of disease, if they could be so kept upon his own premises.

The statute was a codification of the laws relating to contagious diseases among domestic animals. An examination of the statutes codified shows that section twenty-seven, so far as it relates to the expense of isolation or quarantine, has no meaning different from that of St. 1887, c. 252, § 1, or of Pub. Sts. c. 90, § 1, or of St. 1860, c. 220, § 1, which were corresponding provisions of earlier statutes. The statute last cited provided for payment by the town or city only when cattle were " taken from the possession of their owners to be maintained " in isolation. The omission of the words " to be maintained " in the re-enactment of this provision in Pub. Sts. c. 90, § 1, was merely for brevity, and did not change the meaning. The practical construction of the statutes by municipal and State officers seems

to have been that the owner had no right of reimbursement when his cattle were isolated upon his own premises, no instance being found where such compensation has been contended for or paid. Besides this, the quarantine was ordered by a member of the board of cattle commissioners, and one provision of St. 1894, c. 491, § 45, and of St. 1893, c. 306, § 2, was, that, when a member of the board became satisfied that the public good required it, he should cause the affected animals to be isolated at the expense of the owner, or to be killed without appraisal or payment. Looking at the corresponding provisions of previous statutes, or only at those of the statute in force when the plaintiff's cattle were put in quarantine, we think the meaning of § 27 is, that the expense of isolation upon the owner's premises is to be borne by himself, without payment or reimbursement; and that the expense which is to be paid by the city or town, and in part to be reimbursed by the State, is only that of keeping animals isolated upon premises other than those of the owner or person in whose possession the cattle were found when the order of isolation was made.

One item of the plaintiff's account is for the expense of shipping the cattle at the end of the quarantine. It is enough to show that this expense cannot be recovered of the town to say that if, as seems to be true, it is not an expense of the quarantine, there is no ground for its recovery; and if it is such an expense, it cannot be recovered from the town for the reasons stated. In this connection it is to be noted that on June 5, 1895, eleven days before the day to which the plaintiff alleges the quarantine continued, another statute (St. 1895, c. 496) went into effect, by which important changes in the law relating to contagious diseases among domestic animals were made. The cattle commissioners were authorized to expend $100,000 in the year 1895, and St. 1894, c. 491, § 27, was so amended that, if cattle are isolated upon the owner's premises for more than ten days, the expense is to be paid by the Commonwealth, and that the full value of cattle condemned as afflicted with tuberculosis may, under certain circumstances, be paid to the owner. See St. 1895, c. 496, § 9. If the expense of shipping the cattle, for which the plaintiff asks payment, was incurred upon an understanding with the board of cattle commissioners that the cattle should be sent

to the abbatoir to be appraised, killed, and paid for under the new statute, the plaintiff, if entitled to reimbursement from any source of the expense of putting them upon the cars, certainly could not ask it of the town.

*Order sustaining demurrer affirmed; judgment for defendant affirmed.*