JOHN GARDNER *vs.* NEW ENGLAND TELEPHONE AND
TELEGRAPH COMPANY.

Worcester.   November 8, 1897. — January 8, 1898.

Present: KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Employers' Liability Act — Superintendence — Evidence —*
*Exceptions.*

In an action under the employers' liability act, St. 1887, c. 270, for personal injuries occasioned to the plaintiff while employed by the defendant in repairing and erecting telephone poles and wires, the plaintiff and other employees of the defendant testified that A. sometimes did work of the same character with the other men, but generally directed the men. There was also evidence tending to show that A. was known to the plaintiff and the defendant's other employees as a foreman; that they received their orders from him and no one else; that he employed and discharged men for the defendant; that in field work and elsewhere he had entire charge of the men; and that his wages were twenty dollars per month more than the plaintiff received. *Held,* that the jury would have been justified in finding that A.'s principal duty was that of superintendence; and that evidence tending to show that the accident to the plaintiff occurred in consequence of an order given by A. was improperly excluded.

If an action for personal injuries comes to this court on the plaintiff's exceptions to the exclusion of certain evidence, to the ruling that there was no evidence to go to the jury on any of the counts of the declaration, and to the ordering of a verdict for the defendant, an exception taken by the defendant to the admission in evidence of the notice of the time, place, and cause of the injury, and the question of its sufficiency, is not open.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ. The declaration contained counts at common law alleging negligence of the defendant, and under the employers' liability act, St. 1887, c. 270, alleging negligence of a person in the service of the defendant, intrusted with and exercising superintendence, whose sole or principal duty was that of superintendence. Trial in the Superior Court, before *Hopkins,* J., who allowed a bill of exceptions, in substance as follows.

Notice to the defendant of the time, place, and cause of the injury sufficient in form of statement and service was offered and admitted in evidence, against the objection and exception of the defendant, on the ground that the notice purported to be signed by the plaintiff, but the signature was itself type-

written, and both notice and signature were so written by the plaintiff's attorney, or by his direction.

The plaintiff was employed by the defendant in repairing and erecting poles and wires in and about Worcester and its suburbs, and had been employed in such work at least four years prior to the injury.  Upon the day of the accident the plaintiff and four other men were working in Westborough, engaged in replacing an old single wire telephone line, and changing it to a circuit line with two wires.  In doing this, where a pole was found defective, it was replaced, or cut off at the bottom and reset.

The plaintiff had worked there one day previously to the day of the accident, and upon that day his work consisted in repairing poles and setting up new poles, stringing new lines of wire, etc.  At or near the place of the accident there were four poles supporting a line of wires, one of which poles had been removed from the ground by chopping it off at the base, as one fells a tree, and then digging a new hole at the side of the old butt, and setting the shortened pole in this new hole, the pole itself meanwhile being supported at the top by the telephone wire running to and fastened upon a pole on either side.  After the pole was removed from the ground and its end rested upon the ground as above described, the plaintiff was ordered by one Jacobs to hold two spike poles against the telephone pole to support it, a spike pole being a pole of wood twelve to fourteen feet in length, in one end of which is fixed an iron spike sharpened at the end, these poles being used by thrusting the spike into the telephone pole, the operative holding one end of the spike pole against it, and resting the other end on the ground, and thus making by the use of the spike pole a sort of lateral support for the telephone pole.

The plaintiff did as he was ordered, and held the poles, the ends of the same resting upon the ground and the spike ends thrust against the telephone pole, the plaintiff holding one pole in each hand against the telephone pole, and while so holding the spike poles the telephone pole swayed, turned, and finally fell, striking the plaintiff and causing the injuries complained of. After Jacobs gave the order to the plaintiff, he left to go to another pole, two hundred and eight feet distant and on the other side of the road, leaving one man at the pole with the plaintiff,

such other man being engaged in digging a hole in which to set the end of the telephone pole which the plaintiff was holding, and which was left supported only by the spike poles held by the plaintiff and the wire fastened to the top of the pole and to another pole. There was evidence tending to show that the fall of the pole was caused by the moving of the telephone wire running from the pole, which fell to another pole, whereby the wire ceased to act as a support or guy for the top of the pole; that the pole from which the wire was unfastened and moved was distant about two hundred feet, and on the opposite side of the road from the pole which the plaintiff was endeavoring to support; that the plaintiff did not see or know what was being done on the other pole; that he was given no warning of the unfastening and moving of the wire, and knew nothing of it until the pole which he was supporting swayed and fell; that the plaintiff knew of the gang aside from himself being at work on the line, and of the usual way in which the work was done; and there was no evidence that this work was being done in an unusual way. It appeared in evidence that Jacobs was known to the plaintiff and the other employees of the defendant as a foreman; that the employees received their orders from him and no one else; that he employed and discharged them for the defendant; that in field work and elsewhere he had entire charge of the men; and that the plaintiff received $55 per month for his services, and Jacobs received $75 per month. The plaintiff testified, as did other witnesses, co-employees of the plaintiff, that Jacobs sometimes did work of the same character with the other men, but generally directed the men.

The plaintiff contended that Jacobs was a superintendent of the defendant, under the employers' liability act.

It appeared that one of the men employed in the work, named Kehew, was upon the pole to which the wire ran (and was fastened) from the pole which the plaintiff was supporting with the spike poles; that without any warning to the plaintiff, Kehew unfastened the wire from the insulator to which it was fixed, and thrust the wire downward with his foot, loosening it from its hold upon the pole and slacking the wire, and thereupon there was a swaying of the wire and pole where the plaintiff was; that immediately after this Kehew thrust the wire down-

ward two or three feet, thus further shifting the wire, and causing it to become slack and loose; and that the pole which the plaintiff was supporting twisted and turned, and immediately fell upon him.

The plaintiff offered to show that the unfastening and shifting of the wire upon the pole by Kehew was in accordance with an order given him by Jacobs. The judge excluded this evidence; and the plaintiff excepted. The plaintiff then called as a witness one Hunt, the superintendent and general manager of the defendant, who testified that Jacobs " was foreman of the gang of men "; and that " his duty was to give general instructions to the gang and assist the' gang in their work." On cross-examination, the witness testified that Jacobs was to do any work in connection with the men, " the same as the men," and was " to have charge of the gang, and work with them."

The judge ruled that there was no evidence to go to the jury on any of the counts of the plaintiff's declaration, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*H. Parker*, for the plaintiff.

*W. S. B. Hopkins*, (*F. B. Smith* with him,) for the defendant.

MORTON, J. The evidence which was excluded would have tended to show that the accident occurred in consequence of an order or direction given by Jacobs; in other words, that the accident was caused by an act of superintendence on his part. The evidence should have been admitted, therefore, if there was any testimony tending to show that the sole or principal duty of Jacobs was that of superintendence. We think that there was. The exceptions recite that " the plaintiff testified, as did other witnesses, co-employees of the plaintiff, that Jacobs sometimes did work of the same character with the other men, but generally directed the men." There was also testimony tending to show that he was known to the plaintiff and other employees as a foreman; that the employees received their orders from him and no one else; that he employed and discharged men; that in field work and elsewhere he had entire charge of the men; and that the plaintiff received $55 per month, and Jacobs $75. This would have justified the jury in

finding that he was something more than a mere laborer in charge of a gang, — which the defendant contended was what he was, according to other testimony in the case, — and would have justified them in finding that his principal duty, though not his sole one perhaps, was that of superintendence. *Malcolm* v. *Fuller*, 152 Mass. 160, 166. *Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131, 139. *Mahoney* v. *New York & New England Railroad*, 160 Mass. 573, 578, 579. *Crowley* v. *Cutting*, 165 Mass. 436.

The case comes here on the plaintiff's exceptions to the exclusion by the court of the evidence relating to the orders given by Jacobs, and to the ruling of the court that there was no evidence to go to the jury on either of the counts contained in the plaintiff's declaration, and to the ordering of a verdict for the defendant. We do not see, therefore, that the exception taken by the defendant to the admission of the notice, or the question of its sufficiency, is before us.	*Exceptions sustained.*