ANNIE B. CUNNINGHAM, administratrix, *vs.* LYNN AND
BOSTON STREET RAILWAY COMPANY.

Suffolk.   November 17, 18, 1897. — February 24, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Loss of Life — Master and Servant — Action — Negligence — Assumption of
Risk — Employers' Liability Act — Superintendent — Evidence.*

An action cannot be maintained against a street railway corporation for causing the death of an employee of mature years, who, besides an earlier experience in work of various kinds, has been for some time in the defendant's service, and who, while engaged in lowering the truck of an electric car in the defendant's repair shop on skids or rails from an elevated platform to the street several feet away, is injured by being struck by the handle of a windlass used in lowering the car, which is without a clutch or ratchet; but he must be held to have assumed the risk incident to the use of the windlass in the condition in which it was.

Evidence that the foreman in a repair shop of a street railway corporation ordered two of its employees to take the truck of an electric car out of the shop, and, though directing their movements, assisted them in so doing, performing the same work that they did, will not justify a finding, in an action against the corporation for causing the death of one of them while so working, that the foreman was a superintendent or a person whose sole or principal duty was that of superintendence, under the employers' liability act, St. 1887, c. 270.

TORT, under the employers' liability act, St. 1887, c. 270, by the administratrix of the estate of Charles H. Cunningham, for

causing his death on August 31, 1894. Trial in the Superior Court, before *Gaskill,* J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that the deceased at the time of his death was forty-three years of age; that for some time he had been employed by the defendant, previously to which he had worked around cars and carriages, and had been a milkman and a "lumper," so called, making himself generally useful at different places; that on the day of the accident he and a fellow workman, one Beatty, were ordered by the defendant's foreman, one Emery, to take the truck of an electric car out of the defendant's repair shop in Chelsea; that the truck, weighing about five thousand pounds, was then standing on a sliding platform, or turn-table, about six feet in length, the front line of which at the time of the accident was twelve or fifteen feet from the street line of the building; that the floor of the table was about eighteen inches above the level of the street, and trucks and other weights, after they came from the repair shop, were lowered from it to the street by means of skids or inclined ways; that underneath and behind the table and skids, and between the latter, was a pit in which a man could stand; that on the floor of the table were two tracks, the ends of which toward the street projected an inch or two beyond the edge of the table and overhung by one and a half to two inches the tracks of the skids or inclined ways; that about twelve feet behind the table, and about one or two feet from the rear wall of the building, in plain view, stood a windlass braced to the floor and bolted back to the studding; that it consisted of a frame, a drum or barrel, one or two detachable iron handles and two cogs, one small and one large gear; and that the handles of the windlass were about sixteen or eighteen inches long, and the shaft was about waist high. It was proved and admitted that the windlass, which had been used by the defendant for several years, was not provided with any clutch or ratchet at the time of the accident, and never had been.

Beatty testified that, when he, Emery, and Cunningham reached the truck which was to be lowered, he or Emery attached a chain to the rear end of it, or to the part farthest from the street door, and then attached the chain to the hook at the

end of a rope which was coiled around the drum or barrel of the windlass; that at that time Emery was standing on the right hand side of the truck, Cunningham on the left, both on the floor, while the witness was standing down in the pit at the rear of the truck; that after the truck had been attached to the windlass, Emery said, " Give it a push"; that the witness and Emery were not able to push it, and Cunningham came up on the left and all three pushed it a little; that at that time Emery had removed all but one of the trigs which he had previously placed under each wheel; that the trig which remained was a wedge-shaped piece looking as if it had come off a spruce plank, and was about an inch and a half or two inches thick; that when the truck was pushed, it moved a little too far, passed over the trig which remained on the track, and the forward wheels dropped off the rails of the table to the skids, an inch or two below; that as they did so the truck moved a little faster, and Emery said, " Stop the winch"; that the witness clinched the rope which was at his side, and which was the fall rope of the windlass and attached to the truck, and held it as hard as he could, while Cunningham passed by his side, and made a grab at and caught the handle of the winch; that he got his hand on the winch handle, " and kind of leaned toward it," and held it for not over three quarters of a turn, when it broke away from him, flew up, struck him on the head, and threw him to the floor; that the three men could not hold the truck, which went over the trig, off the track, and into the middle of the street, causing the winch, to which it remained attached, rapidly to revolve; and that Emery picked Cunningham up, and that the latter went off himself into the shop for a little while.

On cross-examination, Beatty testified that he worked under Emery, and took his orders from him; that when Emery's order to push the truck was given Cunningham was standing at the middle of the left side of the truck, about nine feet from the windlass; that the truck did not start with a rush, but that after it went over the first trig it did go with a rush, and there was danger of its hitting somebody in the street; that Emery holloed, " Stop the winch"; that the handle was going " not so very fast but what a man could catch it"; that when the truck got

started down the inclined plane, the witness grabbed the rope and tried to hold it, but it got away from him after it got away from Cunningham; that when the whole four wheels got over the trig, off the table, and were clear, the truck went with a rush, and the handle of the winch flew around fast; that Cunningham did not make two or three attempts, but made one grab for the handle and caught it; that when Cunningham got hold of the handle, the forward wheels were off the table, but the other wheels were still on it; and that, besides Emery, Cunningham, and himself, two other workmen, Severne and Cooley, were there when the accident occurred.

Severne testified that he was employed by the defendant at the time of the accident, and was present when it occurred; that he stood between eight and ten feet from the windlass; that he heard Emery's cry, "Stop the winch," and turned around immediately, and saw Cunningham fall back from the winch and strike the floor; that he saw several persons hurry forward to assist the man to his feet and lead him off; that when he saw the winch, the handles were revolving very rapidly, and the truck was flying out in front of the shop; that after the accident he saw the trig, which was wedge-shaped, being one and a half to two inches wide at one end, and from ten inches to a foot long; that he saw Cunningham after the accident; that he sat down for a while, and then walked around; and that he appeared to be in pain, holding his hand to his head, and seeming to be in a dazed condition.

On cross-examination, the witness testified that he was not working under Emery; that he was carrying lumber to a boring machine with his back to the windlass when he heard a man's voice cry out, "Stop the winch"; that when he looked at the windlass the handle was going around like a buzz saw; and that it was not true that Cunningham did not appear to be much hurt, but he walked about alone for a while and finally went away.

On re-direct examination, he testified that he had not seen Cunningham working there prior to that time.

One Cooley testified that he was employed by the defendant at the time of the accident, and was standing when it occurred about ten feet from the inclined track with his back to it, sharpening a chisel; that he heard some one say, "Stop," and also

heard the rattling of the truck as it passed out of the shop, and saw the handle of the winch revolving rapidly; and that he saw two men dragging to his feet a man whom he did not know, and whom he had not seen there before.

One Decatur testified that he was master mechanic of the shops of the defendant's railroad for twenty-five years preceding 1890; that he was familiar with the winch in question up to 1890, after which he had nothing to do with it; that he bought it, and had it put into the shop under his instruction; that sometimes, when the winch was used for lowering weights, a stick was used for the purpose of regulating the movements of the winch to take the place of a clutch or ratchet; that he had put cars out of that shop that weighed 5,000 to 5,220 pounds; that three men would do it easily enough; that two could do it, and had done it with him, if they took care not to let the car get the start of them; and that while he was so employed there a stick or spike was always used, regardless of the number of men on the winch.

One Farrin, who was general foreman of the defendant's repair shop from September, 1893, to February, 1894, testified that he had run out of the shop some electric snowploughs weighing from three to four tons, at which times he had stationed as many men at the handles of the winch as he could get, about three or four men at each end, but that he had used no appliance to regulate its movements or take the place of a clutch.

It was admitted by the defendant that Cunningham died from the effects of a blow received from the handle of the windlass in its repair shop in Chelsea.

At the close of the plaintiff's evidence, the judge, at the defendant's request, ruled that the action could not be maintained; and directed the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

*F. D. Allen & C. N. Harris*, for the plaintiff.

*W. I. Badger & J. Abbott*, for the defendant.

BARKER, J.    1. If the windlass was defective because it had no clutch or ratchet, the lack of those appliances was obvious, and the plaintiff's intestate, a man of mature years, and who, besides an earlier experience in work of various kinds, had been for some time in the defendant's service, must, in the opinion of

a majority of the court, be held to have understood the dangers incident to the use of the windlass in the condition in which it was. He knew as much as any one about the machine, and what might happen from its use. If it was negligence to use it upon the occasion of the accident, the deceased was negligent in working with it as he did. Whatever danger there was in its use he must be held to have voluntarily incurred.

2. The evidence would not justify a finding that Emery, the foreman, was a superintendent or person whose sole or principal duty was that of superintendence. *O'Neil* v. *O'Leary*, 164 Mass. 387.                    *Exceptions overruled.*