CATHERINE J. EAVES *vs.* ATLANTIC NOVELTY MANUFAC-
TURING COMPANY.

Suffolk.   December 15, 1899. — June 20, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Employers' Liability Act — Evidence justifying a Verdict for the Plaintiff.*

In an action for personal injuries under the employers' liability act, St. 1887, c. 270,
evidence which, though contradictory, justifies a finding that T. was a person
whose principal duty was that of a superintendent; that as such superintendent
he gave to the plaintiff the order to start up the machine; that at the time of the
order he had reason to know that the plaintiff might understand it as a command
to try to ascertain by resuming his work whether the machine was all right;
that he so understood the order and was justified in so understanding; that, act-
ing thereon, he attempted to resume work; that while so doing and in the exer-
cise of due care, by reason of the violent and unusual shaking of the machine,
his hands were thrown from their usual place and the presser came down upon
his fingers and crushed them, and that under the circumstances the order was
negligent, makes a case for the plaintiff.

TORT, for personal injuries occasioned to the plaintiff by hav-
ing her fingers cut off in a machine, known as an ending machine,
while in the employ of the defendant.   Trial in the Superior
Court, before *Bishop,* J., who submitted the case to the jury upon
the second count of the declaration, which was under the employ-
ers' liability act, St. 1887, c. 270, § 1, cl. 2, and instructed them,
among other things, as follows:

" The plaintiff claims under the second count that she was in-
jured by reason of the negligence of a person in the service of
the defendant intrusted with and  exercising superintendence,
and whose sole or principal duty was that of superintendence,
whereby the iron bar or presser of the machine fell with ex-
traordinary force and crushed the fingers of the plaintiff as it
came down.   The question for you is, under this count, whether
a person, exercising superintendence as his principal duty, negli-
gently ordered the plaintiff to start up the machine, when he
had reason to know that it was in an unsafe condition to start
up, and dangerous for a person in the plaintiff's position to obey
the order, and while she did not know the same, and whether

by means thereof in the starting up of the machine her hands were thrown under the presser, she exercising due care. . . .

" Mr. Talbot, according to the testimony, had come there with an oil can, and perhaps with a wrench, — but whether with a wrench or not is in dispute, — and had undertaken to see what was the matter, . . . and the plaintiff had stopped the machine for him as he came there. Now, if Mr. Talbot was a person exercising superintendence as his principal duty, if in the exercise of superintendence and as an act of superintendence he negligently ordered the plaintiff to do something which was the cause of her injury, she using due care, she may recover; and that is the question.

"If he was not a person exercising superintendence as his principal duty, and of that you must judge upon the evidence, then the plaintiff cannot recover under this count. And if he did not do a negligent act in the exercise of his superintendence in what he did, then she cannot recover. And she must be, in order to recover, in the exercise herself of due care. The plaintiff's claim about it is that she was at work on this machine, and it had been off and on for a few days; that it was apparent something was the matter with it; what, she did not know; that it skipped, and it had shaken some; and that this condition of things having been called to the attention of Mr. Talbot, he came around to see what was the matter, and to remedy the trouble if there was any, and that he was a superintendent. As to that you must judge, and you will determine from the testimony whether he was a person whose principal duty was that of superintendence. He was a part owner at that time, I believe, and he had certain duties connected with the business of the factory; whether they were such that you can say he exercised the duty of superintendence as his principal duty will be for you to determine. The plaintiff's contention is, he did exercise superintendence as his principal duty, and that coming around there to discover the trouble and remedy it, and getting down behind the machine, he did a negligent act and just what he ought not to have done, in ordering the plaintiff to start the machine up, when it was dangerous for her to do so; that the consequences of that order and of her obeying the order to start the machine up were that it shook violently, that the machine did not operate at

once; and the plaintiff asks you to infer it was out of order and seriously out of order from the fact that it did not operate; and that the violent motion connected with the attempt to start up the machine threw her hands from where they were holding the box on the block up on the plate or block, and the presser came down and caused the injury.

" The gist of that claim is that the plaintiff obeyed the order of a man who exercised, as his principal duty, superintendence, which order was negligently given by him, — given by him, that is, under such circumstances that he fairly should have known it was a dangerous thing for her to attempt to comply with it.

" The defendant denies that Mr. Talbot was a person exercising superintendence as his principal duty. The name 'superintendent' is of little consequence, though it may have some tendency to show that a man is superintendent if he is called so by the people in the establishment; but if he is not called so he may be called by any name and yet he may exercise superintendence, that is, the overseeing of things and of the people, as his principal duty. The defendant says he was an owner, and that he had certain other duties, and that the evidence does not show he did exercise superintendence as his principal duty. The defendant says it was not a negligent thing that Mr. Talbot did. In order to investigate he must see how the machine in its then condition would work, and therefore he says that he told her to put her foot on the treadle. The language of the witness was to 'start up,' and the defendant says that did not necessarily tell her to put her hands in a position where a violent motion would get them on the block. And the defendant says that whatever Mr. Talbot did, the plaintiff knew about the condition of this thing, and if it were a dangerous condition, if the machine were out of order.

" These are the contentions of the two sides. It is for you to say what the order or direction to start up means. If the fair meaning of that language, to the mind of the plaintiff, was that she, standing where she was, should put her foot on the treadle and keep her hands where she ordinarily had them, on the box, that is one thing; but if the fair meaning was that she should simply start the treadle, keeping her hands away, or that it was not an order which fairly could be held to include, to her

apprehension, the putting of her hands on the box,—that is another thing. To start up the machine could be accomplished simply by her putting her foot on the treadle. I think you are called upon to determine what would be the fair interpretation which the plaintiff would be justified in gathering from that language. Mr. Talbot was behind the machine; the plaintiff was in front of it, standing, I suppose; she had put a box on, and was apparently in the act of operating the machine upon that box when Mr. Talbot came along and told her to stop. She stopped, and the box was on and in an incomplete condition; the operation of putting the end on was not completed. When he got behind the machine and said 'Start up,' if that was the language used, what might she fairly infer from that? The order would have been complied with if she had stood back and put her foot on the treadle, but might she fairly infer that she should put her hands where she usually put them, or keep them where she had had them after the box was put on to the block, upon the box around the block and near the top? If she was justified by the form of the direction in keeping her hands there while she was starting up, then she was not negligent, so far as that was concerned, in keeping her hands there. But if she might fairly have understood, and ought to have understood, when he said 'Start up' he meant simply to work the lever operated by the treadle, that is another thing. He did not give her an order to work the machine in the sense of making a box, probably. He did give her an order to start up, which would include the working of the machine or the operating of the machine to the extent of revolving the parts which he was examining so he might see what was the matter. The question is, whether she might fairly enough have inferred, properly and fairly inferred, that she should do that in the way in which she operated the machine, for instance, when she was going to make a box. I instruct you that if the plaintiff understood the danger, or the condition creating the danger, she cannot recover. That is involved in all I mean to say to you. If the plaintiff when ordered to start up the machine attempted to act otherwise than as she might fairly understand she was to do, by the order and direction of Mr. Talbot, according to what she might fairly gather from that as to what she was to do, or if she acted regardless

of the effect of what Mr. Talbot was doing behind, she cannot recover.

"Upon the second count you will return such a verdict as you find by a solution of these questions: Was the plaintiff injured through the negligence of a person who exercised superintendence in that factory, as his principal duty, in the exercise of superintendence in giving the order, the plaintiff herself being in the exercise of due care?  That involves the question of the capacity in which you think Talbot was engaged in the factory, the character of the order which he gave, the character of the act she performed in compliance with the order, as I have stated, and the question whether she herself had reason to think or suppose that she was doing a dangerous act."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*T. W. Proctor*, for the defendant.

*M. J. Creed*, (*J. P. Crosby* with him,) for the plaintiff.

HAMMOND, J.   It will serve no useful purpose to recite in detail the evidence in this case.   It was contradictory, but we think it would warrant a finding that Talbot was a person whose principal duty was that of a superintendent ; that as such superintendent he gave to the plaintiff the order to start up the machine ; that at the time of the order he had reason to know that she might understand it as a command to try to ascertain by resuming her work whether the machine was all right; that she so understood it and was justified in so understanding it; that, acting under that understanding, she attempted to resume her work ; that while she was doing that and in the exercise of due care, by reason of the violent and unusual shaking of the machine her hand was thrown from its usual place and the presser came down upon her fingers and crushed them ; and that under the circumstances the order was negligent.   This would make a case for the plaintiff.

Under the instructions, which were full and appropriate to the issues, the jury must have found the facts to be as above stated.

*Exceptions overruled.*