CANNEY v. WALKEINE.

(Circuit Court of Appeals, First Circuit. June 14, 1901.)

No 379.

MASTER AND SERVANT—INJURY THROUGH NEGLIGENCE OF SUPERINTENDENT—MASSACHUSETTS STATUTE.

The provision of the Massachusetts employers' liability act which gives a right of action against an employer for a personal injury caused to an employé "by reason of the negligence of any person in the service of the employer, entrusted with and exercising superintendence, whose sole or principal duty is that of superintendence," is remedial in character, and not to be so artificially and narrowly construed that the fact, alone, that one given authority of superintendence works with his hands the greater part of the time, necessarily excludes him from being one whose "principal business is that of superintendence." nor do the decisions of the supreme judicial court of the state thereon require such a construction; and where a superintendent, although so working himself, is also during the same time that he is working actively exercising the duty of superintendence, that may be found, in a proper case, to be such "principal business."

In Error to the Circuit Court of the United States for the District of Massachusetts.

Walter T. Badger (Solomon Lincoln, on the brief), for plaintiff in error.

William A. Pew, Jr., for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. In this case there were a verdict and a judgment for the plaintiff below, and the defendant below sued out this writ of error. It will be convenient to use the word "plaintiff" as indicating the plaintiff below, and "defendant" as indicating the defendant below.

The action rests on the provision in the employer's liability act of Massachusetts which gives a right of action for a personal injury caused to an employé, "by reason of the negligence of any person in the service of the employer, entrusted with and exercising superintendence, whose sole or principal duty is that of superintendence." The defendant's proposition is as follows: One who labors the "most of the time with his hands" is not a superintendent, within the meaning of the statute. He puts it to the effect that the statutory word "principal" means principal in point of time, and that the idea that it means principal in point of importance has been expressly negatived. He maintains that this is an arbitrary rule applied by the supreme judicial court of Massachusetts to the construction of this statute, with reference to the circumstances which he claims the jury would have been justified in finding to have existed in the case before us, and he asked an instruction to the jury accordingly. This was not given.

The plaintiff was engaged in drilling in the defendant's granite quarry. While so employed he was struck from behind by a rope,

and was thrown down and injured. The rope was in use to hold down the blocks of a derrick in the same quarry, and it was being tightened by the alleged orders of one Anderson when it struck the plaintiff. There was evidence tending to show that Anderson was negligent, and that his negligence caused the injury.

Anderson was employed by the defendant with the gang in which the plaintiff was working. The defendant testified that he had a man under him who acted for him when he was away,—one Edward Dyer; that he was sometimes there himself, and "then Dyer was there"; that he had four gangs of men (that is, one for each derrick); that there was one man to take charge of each of these gangs; that Anderson had charge of one of them, consisting of from six to seven men; that Anderson would go into the quarry in the morning, and put on the chalk line, and tell the men to cut that line; that he would see that the stone was all right; that, if he (the defendant) had an order for any particular dimension of stone, he would write it off on a card and give it to Anderson; that Anderson would get it out and hoist it up; that, when Anderson was not otherwise engaged, he would take his hammer and go to work with the rest of the gang, —"just the same as the rest of them"; and that he (the defendant) paid the quarryman from 14 to 17 cents an hour, and Anderson about 25 or 30 cents. Anderson testified that the superintendent told him what kind of stone he wanted, and that he did the rest; that he would make up his mind where he would get out stones, and took them wherever he pleased from the ledge on which he was directed to work; that he laid out the lines; that, after the stones were split and blown out, they were hoisted up on the bank, and were there put on a railroad train or wagons; that he had charge of the stones from the time they were started in the pit until they left the quarry; that the man in charge of the derrick was under him, and also the engineer, the tool boy, and the signalman; and that he told them what he wanted done, and they did it. This evidence leaves it entirely plain that, although the plaintiff worked with Anderson and Anderson worked with the plaintiff, they were not wholly employed in the same class of labor, and that Anderson had under his charge men not engaged in drilling, and therefore men not engaged in precisely the same labor in which the plaintiff was engaged, although in the common work and in the same gang. It is not questioned that Anderson was the "boss" of the gang, in the way in which that expression is commonly used, nor that the jury might properly have found that he was engaged, at least to some extent, in superintendence, within the meaning of the statute.

The plaintiff, referring to Anderson, testified, among other things, as follows:

"Q. What was he doing when you were at work? A. Bossed the men.

"Q. Was he doing that all the time? A. All the time.

"Q. Was he present during every hour of the day, looking after the men and watching them? A. Yes."

It was testimony of this character to which the court referred when it said to the jury: "There is some evidence in this case that the man [Anderson], while at work, was also engaged in the line of

superintendence; that, even if working with his hands, he was engaged in keeping an outlook upon the work, and giving directions to the men."

At the outset the court said to the jury:

"There is no arbitrary rule by which you can determine, or, rather, which I can state to you as a rule which should govern your determination of this question. I cannot say to you, and the statute does not mean, that because a man is engaged a fourth of the time in giving orders or directions or planning the work, or because he is engaged a half of the time in manual labor, the question should turn one way or the other, or three-fourths of the time or nine-tenths of the time, as has been stated in one of the decisions of the supreme court of Massachusetts. So it is an open and fair question for you to determine, upon your experience and understanding as to the way things are done, and upon the evidence, whether it was either the sole or principal duty of the man Anderson to superintend and direct."

Thereupon the defendant made the following request:

"I would want your honor to charge that, if the jury find that Anderson did labor most of the time with his hands, he was not a superintendent, within the meaning of the statute."

The court replied to this, "I should have to deny that, in that abstract form," but it reinstructed the jury as follows:

"There seems to be some misunderstanding, gentlemen, as to just what I said with respect to the consideration to be given to the situation if Anderson worked with his hands a fourth of the time, a half of the time, or three-fourths of the time, or nine-tenths of the time. I did not intend to say to you that such expressions on the part of the witnesses would control, or, if you should find he did actually work a large portion of the time that the question of superintendence would necessarily turn upon that fact alone, for the reason that there is some evidence in this case that the man, while at work, was also engaged in the line of superintendence; that, even if working with his hands, he was engaged in keeping an outlook upon the work and giving directions to the men. Of course, if a man was engaged nine-tenths of the time, or perhaps three-fourths of the time, or more than half the time, in actual manual labor, giving up entirely during that period all idea of superintendence or direction, throwing off his responsibility and becoming altogether a common laborer, and having no reference to the direction of the work or outlook upon what was going on, then it probably would follow that he was not a superintendent, or not a superintendent whose chief duty was superintendence. But if at the same time that he was laboring he was giving directions, and adhering to his right to direct and superintend, and was actually keeping an outlook and directing, then it would become a question for you to determine, notwithstanding the fact of manual labor for a greater or less portion of the time; it would be a question for you to settle upon all the evidence, taking into consideration all the evidence, the amount of labor, the importance of superintendence, the extent of direction,—all together,— for you to determine whether his chief duty was that of superintendence."

If the instructions had rested where the court first left them, the charge would, perhaps, have been deficient. It cannot, however, be doubted that what the court added after the defendant made the request which we have cited materially modified what it had before said. In making this modification, the court so fully expressed itself to the jury that there is no question that whatever detrimental impressions the first instructions may have made were removed. Therefore the case fairly turns on the question whether or not the final instructions were correct, and sufficiently full, in view of the request made by the defendant.

We will consider in their chronological order the various decisions of the supreme judicial court of Massachusetts, cited to us by either party.

In Malcolm v. Fuller, 152 Mass. 160, 25 N. E. 83, the nisi prius court, in charging the jury, used these expressions with reference to the person claimed to have been intrusted with superintendence:

"If generally or principally he is at work manually with his hands, then he is not a man whose sole or principal duty is that of superintendence." "That is, if Stewart was set to work with a gang of men, and expected to do his share, either of holding or pounding the drill, and was generally engaged in that employment, or in manual employments about the quarry, then he is not a man whose sole or principal duty is that of superintendence."

These instructions, however, were not passed on by the court in bench, for the case turned on the proposition that the act which caused the injury was not an act of superintendence. The same is true as to Cashman v. Chase, 156 Mass. 342, 31 N. E. 4, in which the court found that it was evident that in operating the engine the person who was alleged to be in superintendence "was doing the work of a laborer, acting upon the directions of others, and not directing them." Also, in Shepard v. Railroad, 158 Mass. 174, 33 N. E. 508, the court failed to state why it held that the section foreman in that case was not charged with superintendence, within the meaning of the statute, and the question of the meaning of the word "principal" in the statute was not specifically raised. Prendible v. Manufacturing Co., 160 Mass. 131, 35 N. E. 675, also fails as an authority for either party before us.

In O'Brien v. Rideout, 161 Mass. 170, 36 N. E. 792, the substance of all the evidence was reported in the bill of exceptions. The court below ordered a verdict for the defendant, and the plaintiff excepted. The court in bench overruled this exception. The foreman stood in similar relations to his co-employés as Anderson in the case at bar, because, while the plaintiff was at work with a circular saw, sawing butternut wood, the foreman, while employed with the same gang, was giving orders, attending to grinding tools, piling lumber, and keeping busy generally. The court said that the evidence would not justify a finding that the foreman came within the statute, and added what was said by one of the witnesses, to the effect that the foreman was "at work pretty much all the time in getting out lumber, or piling it up, or arranging it, or in operating saws." While it is quite possible that this case would have justified us in sustaining a verdict for the defendant, if it had been ordered by the court below, and all the evidence were before us, it fails to state specifically anything by which it can be understood whether or not it intended to lay down an arbitrary rule by which the statute is to be construed, or whether it only referred to the testimony which it quoted as a leading fact, which, under the circumstances, brought it to the conclusion which it reached.

Dowd v. Railroad Co., 162 Mass. 185, 38 N. E. 440, so far as the specific point which we have before us is concerned, is subject to the same observation as Prendible v. Manufacturing Co.

A case which is thought to give much support to the defendant's

position is O'Neil v. O'Leary, 164 Mass. 387, 41 N. E. 662. This came up on exceptions to a refusal at nisi prius to give the following instruction requested by the defendant, appearing at page 389, 164 Mass., and page 662, 41 N. E.:

"There is no evidence that McDonald was employed as a superintendent, whose sole or principal duty was that of superintendence, so that the defendant can be held liable for the negligence of McDonald."

The court in bench, considering only the evidence for the plaintiffs, held that this instruction should have been given. It abstracts that evidence at page 390, 164 Mass., and page 663, 41 N. E., and then proceeds as follows:

"In a sense, it is undoubtedly true that superintendence is more important than manual labor; and so, if superintendence is intrusted to a man who also works with his hands, it may be said that his principal duty is that of superintendence. But if the statute had intended that every person exercising superintendence should not be considered a fellow servant with a person injured, there would have been no need of the words 'whose sole or principal duty is that of superintendence.' These words must have a reasonable interpretation given to them; and a majority of the court is of opinion that it cannot be said of a person who works at manual labor, to the extent shown in this case, that his principal duty is that of superintendence."

It is to be observed that the plaintiff's case contained no proof like that referred to in the charge in the case at bar, to the effect that while the alleged superintendent was at work he "was also engaged in the line of superintendence," and that, "even if working with his hands, he was engaged in keeping an outlook upon the work, and giving directions to the men." In other words, the charge before us went on the ground that, even if the labor performed by Anderson was continuous, the jury might find, on the evidence, that it was of such a character as did not prevent him from also at the same time giving superintendence to the work, and, further, that he did give such superintendence continuously, or substantially so. Of course, we cannot say judicially that this proposition involves any inconsistency. Therefore the precise circumstances under which the case at bar was left to the jury were not brought to the attention of the court in O'Neil v. O'Leary.

Geloneck v. Pump Co., 165 Mass. 202, 216, 43 N. E. 85, is too indefinite to be of use. Crowley v. Cutting, 165 Mass. 436, 43 N. E. 197, by implication, reaffirms the conclusion in O'Neil v. O'Leary; but it had no occasion to pass precisely on the particular question before us. Reynolds v. Barnard, 168 Mass. 226, 46 N. E. 703, is not of importance, except that it again recognizes the conclusion in O'Neil v. O'Leary. The case turned on the fact that the proofs were conflicting, and that therefore the issue was properly submitted to the jury. It again failed to propound the precise question which the evidence and the charge in the case at bar raise.

In Gardner v. Telegraph Co., 170 Mass. 156, 48 N. E. 937, there was a verdict for the defendant; and the sole question was on the admissibility of certain evidence offered by the plaintiff and excluded. The court held that it was admissible on the question of superintendence; using this expression, which we will refer to again: "This" (that is, the evidence excluded) "would have justified the jury

in finding that he" (that is, the alleged superintendent) "was something more than a mere laborer in charge of a gang." Riou v. Granite Co., 171 Mass. 162, 50 N. E. 525, turned on the fact that the act out of which the injury arose was not an act of superintendence. The court, by referring to Reynolds v. Barnard, 168 Mass. 226, 46 N. E. 703, reaffirmed whatever there is in O'Neil v. O'Leary, 164 Mass. 387, 41 N. E. 662. Eaves v. Manufacturing Co., 176 Mass. 369, 373, 57 N. E. 669, is wholly indefinite, so far as concerns the question which we have to determine.

The result of these decisions undoubtedly establishes as a general rule what is restated in Reynolds v. Barnard, 168 Mass., at page 228, 46 N. E. 704,—that, when an employé works with his hands the greater portion of the time, he cannot superintend, within the purview of the statute; but they do not compel us to the conclusion that this rule is absolute, and to be applied without qualification under exceptional circumstances. When, as said in what we have already quoted from Gardner v. Telegraph Co., the alleged superintendent is only "a mere laborer in charge of the gang," this general rule might well be applied, if not as a rule of law, at least as a rule of presumption of fact so forcible that the court would not allow a jury to disregard it. To go further, however, than to state it ordinarily as illustrative for the guidance of juries, would give an artificial construction to a statute which seems simple, plain on its face, and reasonable in its purpose; and it would also hold that the court could assume to know that a man cannot work constantly with his hands, and yet exercise superintendence in such manner that that is his principal duty. Such an assumption would be so forced as to exclude the possibility, which the common mind knows to exist,—that not only may an employé be engaged at all times in labor with his hands, and yet exercise superintendence under such circumstances that that is his principal duty, but that, also, he may be so engaged under such peculiar circumstances that quite continuous laboring with his hands is a necessary part of the duty of superintendence. Since none of the decisions which have come to our observation were rendered under circumstances which brought to the attention of the court the exceptional facts in support of which the plaintiff produced evidence in the case at bar, and since, therefore, we are not concluded thereby with reference to such exceptional facts, and since, moreover, the defendant's proposition would compel us to give an artificial and narrow construction to a remedial statute, contrary to the just and reasonable rules ordinarily applicable, and since, also, the alleged superintendent in this case was, as we have shown, "something more than a mere laborer in charge of a gang," we are unable to determine that the instructions given the jury were not suitable and sufficient.

The judgment of the circuit court is affirmed, with interest, and the defendant in error recovers the costs of appeal.