## JAMES ROBERTSON *vs.* ALBERT A. HERSEY.

Suffolk.    January 9, 1908. — May 20, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.

At the trial of an action of tort against the proprietor of a pile driver, brought under R. L. c. 106, § 71, cl. 2, by one who was employed to assist in its operation, to recover for personal injuries received by him because of alleged negligence of a superintendent of the defendant, it appeared that the machine was moved from place to place on two small rollers which ran along two long rollers as a track, and that, when it was necessary to change the direction in which the machine was being moved, the two small rollers and the machine resting upon them were pried up, and the forward end of the long rollers were moved one way or the other. On the occasion when the plaintiff was injured, a single lever had been found inadequate and the superintendent had directed another lever, with one end under a wall, to be placed over and at right angles to the long arm of the first lever, and that men should then pull down on the second lever. While such compound lever was being used and the plaintiff was engaged in arranging the long rolls, the lever slipped, and one of the arms struck and injured him. There was evidence tending to show that the plaintiff, although he often had assisted in prying up the machine and moving the rollers, never had done so when a compound lever was used, and did not know of any danger attending its use and was not warned in this instance, and that such use of a compound lever was unusual and dangerous. *Held,* that the plaintiff did not as a matter of law assume the risk of the injury, and that there was evidence that the plaintiff was in the exercise of due care and that negligence of the superintendent caused his injury.

At the trial of an action of tort brought under R. L. c. 106, § 71, cl. 2, by an employee against his employer, to recover for injuries alleged to have been received by the plaintiff by reason of negligence of a superintendent of the defendant, a material question was whether the person alleged to have been a superintendent was one " whose . . . principal duty was that of superintendence " within the meaning of the statute. The act of superintendence alleged to have been negligent was in directing the plaintiff and his fellow workmen to use a dangerous method in moving a pile driver without warning them of the danger. It appeared that the alleged superintendent had been employed by the defendant for about seven years in charge of pile driving and in work of that sort, that he generally hired and paid the men, that only he gave orders and directions to them, that the defendant gave him orders as to where a job was, and, after receiving the orders, he made his own plans and carried them out, that on the job where the plaintiff was injured he alone directed how the work should be done and was referred to as superintendent or foreman, that he was paid $20 per week, and the men $13.50. It also appeared that he worked with the men in some parts of the work, but that he alone determined what work he should do, and that, while working with the men, he frequently was giving orders. *Held,* that the alleged superintendent's principal duty was that of superintendence within the terms of the statute, and that, in the instance in question, he was acting as a superintendent in giving directions to the plaintiff.

TORT, under R. L. c. 106, § 71, cl. 2, for personal injuries alleged to have been received by the plaintiff, while he was in the defendant's employ, by reason of negligence of a superintendent of the defendant. Writ in the Superior Court for the county of Suffolk dated October 12, 1903.

There was a trial before *White*, J. Besides the facts stated in the opinion, it appeared that the plaintiff was injured by being hit by a pry which was used to turn the pile driver. The pile driver was placed on two cross rolls, which rested on two long rolls underneath. The long rolls formed a track on which the upper rolls were moved, carrying the pile driver with them. The upper rolls were turned over and moved by iron bars placed in holes in their ends. When it was desired to move the pile driver around a corner, the lower rolls were moved, or "fleeted," so as to change their direction. This was done by prying up the upper rolls and moving the lower ones by hand. The plaintiff had helped fleet lower rolls hundreds of times.

On the day of the accident it became necessary to turn the pile driver, and, in order to do this, a single pry was used on the upper roll. The man who was set to bear down on the end of the pry could not hold it down and was lifted up in the air. One Crowell then suggested to McArthur the use of a compound pry, one pry over and across the long arm of the other, and this suggestion was adopted by him, and he directed its use. The compound pry was held down by Crowell bearing his weight on the end of the upper pry. When the pry was let go, it came up quickly, and the lower pry flew and struck the plaintiff.

There also was evidence introduced by the plaintiff which tended to show that the use of a compound pry, for the purposes for which it was used in this case, was very unusual and was dangerous. The plaintiff testified that he never had used a compound pry for such a purpose before and had not been warned of its dangers. Other facts are stated in the opinion.

At the close of the evidence, the presiding judge directed a verdict for the defendant and the plaintiff excepted.

*E. R. Anderson,* (*A. T. Smith* with him,) for the plaintiff.

*J. Lowell & J. A. Lowell,* for the defendant.

RUGG, J. There was ample evidence that the plaintiff was in the exercise of due care, and that he did not assume the risk

of injury arising from the use of the compound pry, the slipping of which caused the damage for which this action is brought. A part of the plaintiff's work was to assist in moving the pile driver, so that it could be used in its work. A stick of timber was used as a pry for this purpose, but at the time of the accident the single lever did not furnish sufficient power, so that another, with one end under an adjoining wall or stone as fulcrum, was put on the end of the first stick of timber, in order to increase the leverage. The likelihood that this pry would slip cannot be said to have been so obvious that one not familiar with its use, who never had seen it slip, can be held to have assumed the risk.

The chief question is whether there was sufficient evidence that McArthur, by the direction of whom the compound pry was used, was a superintendent " whose . . . principal duty was that of superintendence," within the meaning of these words as used in the employers' liability act, R. L. c. 106, § 71. There was evidence tending to show that McArthur had been working for the defendant about seven years, in charge of pile driving machines, pile driving scows and lighters, and general work of that sort; that he hired the plaintiff, and generally hired and paid the men: that he alone gave orders and directions to the men; that from the defendant he received orders as to where the job was, and generally, after that, made his own plans and carried them out, and that on the job in question he did certain work with the men, and there was certain other work that he did not do, and that he himself solely determined what work he should do, no one directing him in this particular; and that nothing was done by any one, so far as moving the machine was concerned, or the way in which it should be moved or operated except under his direction. He was referred to by the men as superintendent or foreman. In connection with these duties, he worked with the men the same as the others all the time, and his place while the machine was at work was in front of it, keeping the piles straight and giving the directions to the men to keep the machine in position, so that the piles could be driven straight, and that in this connection he frequently was giving orders. His pay was $20 per week, while that of the other men employed was $13.50 per week.

There is no single test which can be universally applied to determine whether one's principal duties are those of superintendence. The sum of a man's duties is made up of many details, and where the emphasis may fall, in any particular instance, goes far toward determining the question whether he is principally a superintendent or principally a laborer. Oftentimes this emphasis is furnished by the relative amount of time which is spent in manual labor, and that employed in giving directions; but this, although important, is not necessarily decisive.

Without selecting any particular duty of McArthur out of the enumeration of responsibilities reposed in him by the defendant as above recited, it is plain that, looking at his work as a whole, his principal duty was that of superintendence. The driving of piles for foundations, with the operation of the machine and the direction of the laborers, skilled and unskilled, necessarily employed in connection with it, requires something more of trust and responsibility than a mere working foreman. Especially is this so when the only responsibility assumed by the employer was to deliver to McArthur the job that was to be done, and leave all the rest of it to him to do. The hiring of men, which involves the fixing of their compensation, the discharging and paying of them, are acts of superintendence, and not of labor. It appears also that it was constantly necessary during the day for McArthur to give orders as to the placing of the piles and the method of driving them as well as respecting the moving of the machine from time to time. The extent and character of manual labor performed by McArthur was wholly within his own discretion, from which the inference follows that this was not the principal, but a subsidiary and incidental part of the work, which he was employed to do. The chief responsibility placed upon him by the defendant was to see that the work was done. If he chose to assist with his own hands, that was a matter entirely of his own volition, and not his principal duty. The fact that McArthur labored so much appears to have been due rather to his spirit of industry than to the duty laid upon him by his employment. His power and duty under his employment were more extensive than those shown as to one held to be a superintendent in *Hourigan* v. *Boston Elevated Railway*, 193

Mass. 495. On the whole the jury would have been warranted in finding that he was superintendent within the employers' liability act. The circumstances bring this within cases like *Baggneski* v. *Lyman Mills,* 193 Mass. 103, *Murphy* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 18, *Rapson* v. *Leighton,* 187 Mass. 432, and *Gardner* v. *New England Telephone & Telegraph Co.* 170 Mass. 156, and not within cases like *O'Neil* v. *O'Leary,* 164 Mass. 387, and *Mulligan* v. *McCaffery,* 182 Mass. 420.

The compound pry was adopted as a method of performing the work by reason of McArthur's direction, and this may have been found to be an act of superintendence, even though he may have assisted in performing the manual labor necessary to execute his order. *Meagher* v. *Crawford Laundry Machinery Co.* 187 Mass. 586. *McPhee* v. *New England Structural Co.* 188 Mass. 141.

*Exceptions sustained.*