CHARLES MATTSON *vs.* AMERICAN STEEL AND WIRE COMPANY
OF NEW JERSEY.

Worcester.   November 6, 1908. — January 5, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability, In factory yard.

At the trial of an action of tort against a steel manufacturer to recover for personal injuries alleged to have been received by the plaintiff while in the defendant's employ and to have been caused by negligence on the part of a superintendent of the defendant, it appeared that the injury to the plaintiff was caused by the collision in the defendant's factory yard, which covered a large space and contained a network of tracks, of an engine, upon which the plaintiff was, with a car placed on the track by orders of one L., and there was evidence tending to show that L. and L. only gave orders to the other men in the yard, eight in number, that he got twenty-five cents a day more pay than they did, that occasionally, "when he did not have anything else to look after," he worked with his hands, and that he received directions from another person, not the defendant, written on pieces of paper, stating that certain designated material in the yard was to be moved to certain designated places in the factory. *Held,* that there was evidence which would warrant a finding that L. had entire charge and superintendence of the department of distribution of materials in the yard, and that superintendence was his principal duty, and therefore that he was a person for whose negligence causing injury to an employee the defendant would be liable under R. L. c. 106, § 71, cl. 2.

At the trial of an action of tort against a steel manufacturer to recover for personal injuries alleged to have been received by the plaintiff while in the defendant's employ, it appeared that at the time of the alleged injury the plaintiff was employed as lookout on a narrow gauge switching engine in the yard, that the yard was extensive and contained a network of tracks, both narrow gauge and broad gauge, that the superintendent of the yard, under whom the plaintiff worked, sometimes directed that a car be moved by hand, but that, whenever he did so, he notified the engine crew; that the accident which caused the plaintiff's injury occurred at ten o'clock at night and was a collision between the engine upon which the plaintiff was and a car which by the superintendent's order had been moved by hand upon the track where the engine was working, but of which the superintendent had failed to notify the engine crew. *Held,* that there was evidence of negligence of the superintendent, and that the injury was not one of which the plaintiff had assumed the risk.

At a trial of an action of tort against a steel manufacturer to recover for personal injuries alleged to have been received by the plaintiff while in the defendant's employ, it appeared that the plaintiff was injured while on the foot board of a narrow gauge switching engine in the yard of the defendant acting as a lookout, that the yard was extensive and contained a network of tracks, that the engine, on which the plaintiff was, came into collision with a car which had been put on the track by hand by order of a superintendent of the defendant who negligently

had failed to inform the plaintiff of that fact, that a few minutes before the collision the plaintiff on the engine had been by the same point where the collision occurred and had observed that the car was not on the track where it was when the collision occurred, that the superintendent was accustomed to inform the engine crew when a car was moved in the yard by hand, and that the accident occurred at ten o'clock at night. *Held*, that the question, whether the plaintiff when injured was exercising as much care as he should have exercised under the circumstances, was for the jury.

TORT under R. L. c. 106, § 71, cl. 2, for personal injuries alleged to have been received by the plaintiff while in the employ of the defendant and to have been caused by negligence on the part of a superintendent of the defendant. Writ in the Superior Court for the county of Worcester dated December 22, 1906.

The case was tried before *Dana*, J. There was evidence tending to show that, when injured, the plaintiff was riding on the foot board running across the back of a narrow gauge switch engine owned and controlled by the defendant, his duties being those of a lookout; that as the engine was backing down a track at about ten o'clock at night, it came into collision with the end of a car which had been pushed back over a switch on to the track upon which the switch engine was approaching, and the plaintiff was injured; that the car was thus placed by orders of one Locks, whom the plaintiff contended was a superintendent of the defendant, and that Locks should have warned the plaintiff of the position of the car, but did not do so.

There also was evidence tending to show that Locks and Locks only gave orders to the plaintiff and other men in the yard, generally about eight in number, that he got twenty-five cents a day more pay than the others, that he worked with his hands with the other men when he did not have anything else to look after, and that he received directions from Hartman, the "stock chaser," written on a slip of paper, as to what material he should get and where he should deliver it.

Other facts are stated in the opinion.

At the close of the plaintiff's evidence, the presiding judge ordered a verdict for the defendant; and the plaintiff alleged an exception.

*V. E. Runo*, for the plaintiff.

*F. F. Dresser*, for the defendant.

KNOWLTON, C. J.  The defendant is the proprietor of an important manufacturing business in Worcester, and its yard covers a large space upon which are broad gauge tracks for railroad cars and an extensive net work of narrow gauge tracks over which bucket cars are run by dummy engines.  Bucket cars are eight feet long and four feet high, built with a platform that carries three iron boxes or buckets, which are unloaded by lifting the buckets from the platform and dumping their contents into the steel furnaces.  One Hartman, called a stock chaser, received a list of the different kinds and amounts of material that were needed for the steel furnaces, and he then gave direction to one Locks, who was in charge of the cars and commanded the users of them, the scrap yard engine crew, to take the requisite number of bucket cars to the proper places to be filled, and to make distribution of the quantities that he was called upon to supply.  The jury well might have found that Locks had the entire charge and superintendence of the business of getting these various kinds of material, called for by Hartman, from the different places where they were kept, and delivering them to the furnaces where they were needed, and that this superintendence was his principal duty.  He and his crew were busy loading and unloading, using bucket cars for the delivery of the property.  The plaintiff was going about the yard from place to place upon different tracks, with a dummy engine, moving these bucket cars to be loaded and unloaded. The accident happened at ten o'clock at night, from a collision of the engine with a corner of a bucket car which had been standing with others on the next track parallel to that on which the engine was moving, but had been pushed down by hand upon a switch track crossing over to the other, so far that a corner and a part of its side projected over the line of passage of cars and the engine on the other track where the engine was running.  Such cars were frequently moved short distances by hand, in connection with loading and unloading, but there was testimony that when they were so moved Locks usually informed the engine crew of it.  This car was moved by Locks a short time before the accident, but the engine crew did not know it. Because the regular engineer was away and the acting engineer was not familiar with the yard, the plaintiff was employed as a

lookout, and was riding on the foot board at the rear of the engine, which was going backward when the collision occurred. The jury might have found that Locks was a superintendent of this department of distribution, and was guilty of negligence in moving this car as he did without afterwards informing the plaintiff what he had done. While the plaintiff was expected to look out for cars and other obstacles as the engine moved about, the jury might have found it to be negligent for Locks greatly to increase the risk in a place where the plaintiff, from his observation and knowledge of conditions a few minutes before, had reason to believe that the track was clear. The lights and shadows in the night time made it far more difficult to discover the exact position of the bucket cars than it would have been in the daytime.

We are also of opinion that it was a question for the jury whether the plaintiff was in the exercise of due care. There was much to show that he was not so vigilant as he ought to have been. The engineer testified that he and the plaintiff were talking together, and while he said in general that they were both looking forward, there were indications in his testimony that the plaintiff was not looking carefully. But the plaintiff denied that he was talking with the engineer, and testified that just before the accident he was looking forward to see if the track was clear. We are of opinion that the question whether he was exercising as much care as one ought to exercise under such circumstances was for the jury to determine as a matter of fact.

*Exceptions sustained.*