· CHARLES MATTSON vs. AMERICAN STEEL AND WIRE
COMPANY OF NEW JERSEY.

Worcester.   October 3, 1910. — October 18, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability, In factory yard.

At the trial of an action of tort against a steel manufacturer to recover for personal injuries alleged to have been received by the plaintiff while in the defendant's employ, there was evidence tending to show that the plaintiff was injured while on the foot board at the rear of a narrow gauge switching engine in the yard of the defendant keeping a lookout for intercepting cars as the engine backed down a track, that he had been employed by the defendant for three and a half years and that it was his duty to keep such a lookout and to see that the track was clear, that the yard was extensive and contained a network of tracks, that the engine, on which the plaintiff was, came into collision with a car which had been put on the track by hand by order of a superintendent of the defendant who negligently had failed to inform the plaintiff of that fact, that a few minutes before the collision the plaintiff on the engine had been by the same point where the collision occurred and had observed that the car was not on the track where it was when the collision occurred, that the superintendent was accustomed to inform the engine crew when a car was moved in the yard by hand, and that the accident occurred at ten o'clock at night.  *Held,* that the question, whether the plaintiff when injured was exercising as much care as he should have exercised under the circumstances, was for the jury.

· At the trial of an action of tort against a steel manufacturer to recover for personal injuries alleged to have been received by the plaintiff while in the defendant's employ and to have been caused by negligence on the part of a superintendent of the defendant, it appeared that the injury to the plaintiff was caused by a collision in the defendant's factory yard, which covered a large space and contained a network of tracks, between an engine, upon which the plaintiff was, and a car placed on the track by orders of one L., and there was evidence tending to show that the factory ran day and night, that one D. was a superintendent who was in charge during the daytime, that L. did D.'s work at night and that he and he only gave orders to the other men in the yard, eight in number, that he got twenty-five cents a day more pay than they did, that occasionally "when he did not have anything else to look after," he worked with his hands, and that he received directions from another person, not the defendant, written on pieces of paper, stating that certain designated material in the yard was to be moved to certain designated places in the factory.  There also was evidence that a gang called the "shear gang" received orders from L. *Held,* that there was evidence which would warrant a finding that L. had entire charge and superintendence of the department of distribution of materials in the yard, and that superintendence was his principal duty, and therefore that he was a person for whose negligence causing injury to an employee the defendant would be liable under R. L. c. 106, § 71, cl. 2.

TORT under R. L. c. 106, § 71, cl. 2, for personal injuries alleged to have been received by the plaintiff while in the employ of the defendant and to have been caused by negligence on the part of one Locks, alleged to have been a superintendent of the defendant. Writ dated December 22, 1906.

The case previously was before this court and was reported in 200 Mass. 360, when exceptions by the plaintiff to a ruling ordering a verdict for the defendant were sustained.

The case was again tried before *Sanderson*, J., when there was a verdict for the plaintiff; and the defendant alleged exceptions.

The facts are stated in the opinion.

*F. F. Dresser*, for the defendant.

*V. E. Runo*, for the plaintiff.

MORTON, J. In the former opinion by the Chief Justice (200 Mass. 360) it is said that "Because the regular engineer was away and the acting engineer was not familiar with the yard, the plaintiff was employed as a lookout." From the present bill of exceptions it appears that the plaintiff was employed as a brakeman and had been so employed for three and a half years, and that it was his duty to ride on the foot board, as he was doing at the time of the accident, and keep a lookout and see that the track was clear. We do not think that the difference is so material as to compel a different conclusion in regard to the plaintiff's due care. In either case he was bound to keep a lookout and see that the track was clear. The plaintiff testified at this trial,* as he did in substance before, that he was standing on the foot board looking down the track in the direction in which they were going, and that it was dark and he did not see any obstruction. He also testified that he had been over the switch where the accident occurred many times during the evening, the last time four or five minutes before the accident, and that there was no obstruction then. He further testified that it was customary for Locks to tell him when any of the bucket cars were moved by hand, but that no such notice was given to him in regard to the bucket car which caused the accident, and which was so moved. In respect to cars moved by the

---

* Before *Sanderson*, J.

engine on which he was working he naturally would be expected to keep run of them himself. The engineer testified that the plaintiff stood turned around looking at him and talking to him as the engine was backing down. But this was denied by the plaintiff, and we think, as was said before by the Chief Justice, that the question of the plaintiff's due care was for the jury.

One Dobie testified for the defendant and his testimony, which was new, tended to show that Locks was not a superintendent. It is plain that Dobie himself was a superintendent. The works ran day and night, but Dobie worked only during the day time. The plaintiff worked nights, and there was testimony tending to show that he did Dobie's work at night. There was also testimony tending to show that he had charge of the stockers' gang and that it was his business to get from the stockchaser, as he was called, directions as to the kind and amount of stock that was required for the different furnaces, and then to see that it was loaded into bucket cars by the stockers and taken by the engine to the furnaces. The plaintiff and the engineer were subject to his directions, or it could be found that they were, and there was also testimony tending to show that a gang called the shear gang received orders from him. He worked more or less with his hands, and if Dobie's testimony was to be believed that was what he principally did. But it was for the jury to say what weight should be given to Dobie's testimony and to decide upon the whole evidence whether Locks's principal duty was or was not that of superintendence. In important, if not decisive, respects the case is substantially the same as it was before, and it cannot be said now, as the Chief Justice said in substance that it could not be said then, that there was no evidence warranting the jury in finding that Locks's principal duty was that of superintendence, and that the accident was due to negligence on his part.

*Exceptions overruled.*