JAMES FITZGERALD *vs.* WORCESTER AND SOUTHBRIDGE STREET RAILWAY COMPANY.

Worcester.    September 29, 1908. — October 23, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence*, Employer's liability.    *Street Railway.*

Negligence on the part of the car despatcher of a street railway company in the performance of his duties is negligence of an employee of such company who is intrusted with and exercising superintendence under R. L. c. 106, § 71, cl. 2, and such company is liable to its other employees for personal injuries caused by such negligence.

At the trial of an action against a street railway company under R. L. c. 106, § 71, cl. 2, § 72, by the administrator of one alleged to have received injuries which resulted in his death in a collision between two electric street cars of the defendant, one of which the plaintiff's intestate was operating as motorman, there was evidence that the car which the plaintiff's intestate was operating was being run under and in accordance with special orders and not as one of the cars upon the defendant's regular schedule, and that the car which ran into it was running on the regular schedule ; that it was a general custom of the defendant to notify both the conductor and the motorman of a regular car which was to wait for a special car, and also to post all orders for special cars which conflicted with the regular schedule on a certain bulletin board in the car barn ; that, at a reception given to a retiring officer of the defendant the night before the accident, the plaintiff's intestate and the conductor in charge of his car received their orders as to the special car orally from the car despatcher of the defendant, and at the same time the conductor of the regular car which ran into theirs received oral notice not to start from the car barn until the car, which the plaintiff's intestate was running, had passed, but that the motorman of the regular car received no notice or order with regard to the special car, and that no notice was posted on the bulletin board. *Held,* that there was evidence warranting findings that the car despatcher was negligent in not giving to the motorman of the regular car, as well as to the conductor, orders to wait for the special car, and in not posting the order as to the special car on the bulletin board, and that such negligence was the cause of the collision.

TORT for damages for the conscious suffering and death of the plaintiff's intestate, resulting from a collision beween two

electric street cars of the defendant, one of which he was operating as motorman, and alleged to have resulted from "negligence of employees of the defendant who were intrusted with and were exercising superintendence, and whose sole or principal duty was that of superintendence." Writ in the Superior Court for the county of Worcester dated October 5, 1907.

There was a trial before *Gaskill,* J. The material facts are stated in the opinion. In his charge he submitted four questions to the jury, which were answered as follows:

1. Was the injury to the deceased George H. Fitzgerald caused by the negligence of William Kingdon? Yes.

2. Was the injury to said deceased caused by the negligence of Adams? Yes.

3. How much is the plaintiff entitled to for the conscious suffering of said deceased? $2,500.

4. How much is the plaintiff entitled to for the death of said deceased? $2,500.

The presiding judge then directed the jury to return a verdict for the defendant, and reported the case to this court with the stipulation that, if he was correct in directing the verdict, the verdict was to stand, but if he was not correct, "judgment was to be entered for the plaintiff, by agreement of counsel, for $5,000 with interest and costs."

*C. M. Thayer,* (*J. O. Sibley* with him,) for the plaintiff.

*C. C. Milton,* for the defendant.

LORING, J. This action was brought to recover damages for the conscious suffering and death of George H. Fitzgerald, who, in August, 1907, was a motorman in the defendant's employ.

By the defendant's regular schedule it was Fitzgerald's duty to run a car each week day, with one Campbell as conductor, from Charlton to Worcester, starting from the car barn in Charlton at 5.45 A. M. On the evening of August 28, Fitzgerald and Campbell received a verbal order from one Kingdon, the defendant's car despatcher, to run their car as a special car from Charlton to Southbridge and return before starting their regular trip from Charlton to Worcester at 5.45 A. M. The order was to start from the Charlton car barn at 5.05 A. M., go to Southbridge, leave Southbridge on the return trip at 5.27 A. M., passing two cars at the optical works in South-

bridge, " then right of way to the car barn and then on regular schedule," to quote from the testimony of Campbell.

Fitzgerald and Campbell left Charlton on the morning of August 29 as instructed, arrived at Southbridge, and started on the return trip. There was evidence that when they were within a minute and a half or two minutes of Charlton they were run into by a car which by the regular schedule left Charlton for Southbridge at 5.45 A. M., the same minute at which, by the same schedule, Fitzgerald's and Campbell's car was to leave Charlton for Worcester; · that Fitzgerald first saw this car when it was about two hundred feet away, as he came around a curve at full speed (from twenty to twenty-five miles an hour) ; that he did all in his power to stop his car; but that in spite of this the other car (an open one) " mounted " his car (a closed one) and he was caught before he could get out of the way.

Whether Fitzgerald and Campbell were behind time on the one hand, or on the other hand whether the other car started before the schedule time was not clear on the evidence and is not important. There was evidence that the car despatcher told the conductor of this other car " to wait at the car barn until he had seen us [Fitzgerald and Campbell] go by," to quote again from Campbell's testimony.

One Farquhar was the motorman of this other car which, by the regular schedule, was to leave Charlton for Southbridge at 5.45 A. M.

It appeared that the car despatcher's office was at the defendant's car barn at Oxford.

It happened that Kingdon, the car despatcher, Fitzgerald and Campbell (the motorman and conductor of the car which ran as a special car to Southbridge with the right of way on its return trip to Charlton) and Smith (the conductor of the regular car leaving Charlton for Southbridge and running against the special car if it left Charlton before that car arrived there) were at a reception at Webster on the evening of August 28, and that all the orders given by Kingdon the car despatcher were given there, by word of mouth. Farquhar (the motorman of this other car) was not at the reception and received no order or notice in the matter. This reception was given to one

Anderson, the superintendent of the defendant's railway, who was leaving its employ, and was attended by some eighteen to twenty employees.

The plaintiff introduced evidence from which the jury were warranted in finding that it was the general custom of the defendant corporation to notify both the conductor and the motorman of a regular car which is to wait for a special car, and also to post all orders for special cars which conflict with the regular schedule on a bulletin board hung under the clock in the motormen's and conductors' lobby in the Charlton Street car barn.

Where the result of an employee's forgetting an order is not of serious consequence, an employer's duty is performed if the proper order is given clearly by word of mouth to one employee. But where life or death hangs on an order's being executed as given, no chances should be taken. It might well be found in such a case to be an act of negligence if precautions were not taken against the order's being forgotten or misunderstood.

The general custom of the defendant's road (which was testified to in the case at bar) required such precautions to be taken in giving an order of that kind. That general custom testified to was to notify the motorman as well as the conductor of the regular car which was to wait for the special car, and to post such an order on the bulletin board in the motormen's and conductors' lobby in the car barn from which the regular car was to start.

In the case at bar the plaintiff waived all but two counts of the declaration. In both of these the plaintiff counted on " the negligence of employees of the defendant who were intrusted with and were exercising superintendence and whose sole or principal duty was that of superintendence." His contention is that the negligence of a car despatcher is the negligence of an employee of the defendant who was intrusted with and was exercising superintendence.

The plaintiff is right in this contention. It was decided in *Doe* v. *Boston & Worcester Street Railway*, 195 Mass. 168, that a car despatcher to whom is confided the management of cars on the tracks of a street railway is an employee intrusted with and exercising superintendence, and whose sole or principal duty

is that of superintendence within R. L. c. 106, § 71, cl. 2.    See also in this connection *Hankins* v. *New York, Lake Erie & Western Railroad*, 142 N. Y. 416; *Lewis* v. *Seifert*, 116 Penn. St. 628; *Darrigan* v. *New York & New England Railroad*, 52 Conn. 285.

From what has been said the jury were warranted in finding that Kingdon was negligent in not giving the order to Farquhar, the motorman of the regular car, as well as to Smith, the conductor of it, to wait in the car barn until the special car had passed; and in not posting that order on the bulletin board.

The defendant has made the further contention that the cause of the accident here in question, and the sole cause of it, was Smith's having forgotten the order which the evidence showed was given to him by Kingdon by word of mouth; and for that reason that the case comes within *Stone* v. *Boston & Albany Railroad*, 171 Mass. 536, *Glassey* v. *Worcester Consolidated Street Railway*, 185 Mass. 315, and *Higgins* v. *Higgins*, 188 Mass. 113.

But the reasons which make it the duty of the employer or his superintendent (in such a case as that now before us) to take precautions against an order being forgotten or misunderstood make the failure to do that a proximate cause of the accident if an order verbally given to the conductor alone is forgotten and an accident occurs.

In this event, by the terms of the report, judgment is to be entered for the plaintiff for $5,000, with interest and costs.    But since the $2,500 for which a verdict is given in the first count goes to different persons from those to whom the $2,500 for which a verdict is given in the second count should be paid, we construe the report to mean that the verdict entered for the defendant should be set aside, that a judgment for $2,500 is to be entered on each count, as of the date of the trial.    That judgment should carry interest from the date of the verdict with one set of costs.

*So ordered.*