MARTIN MOONEY *vs.* BENJAMIN F. SMITH COMPANY.

Bristol. January 21, 1910. — February 24, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.

In an action under the employers' liability act for injuries received while in the employ of the defendant, from being struck by a plank, which had been held in place by a wire against a concrete wall in process of hardening and which fell upon the plaintiff when the wire was cut by a person alleged to be a superintendent of the defendant without giving the plaintiff any warning that the plank was about to fall, the defendant contended that there was no evidence warranting a finding that the person who cut the wire was entrusted by the defendant with superintendence within the meaning of the statute. This person was referred to in the testimony as the "boss carpenter," by witnesses who also from their daily observation of him described his principal work in the common employment as giving orders to the men. His wages were twenty cents per day more than those paid his fellows. He testified that his principal work was to tell the men under him, numbering ten or fifteen or more, what to do; that he could change their work; that when he was not satisfied with a man he could send him elsewhere; that he did not labor at carpentering or only a very little, and that he "was not supposed to do any work"; that his larger pay "was for bossing the men, looking after them that they done the work right, tell them what to do," that he did not hire or discharge men, but told another person who

discharged men on his request. *Held,* that this evidence was sufficient to support a finding that the person in question was a superintendent, " whose sole or principal duty was that of superintendence " within the meaning of the statute.

In an action under the employers' liability act for injuries received while in the employ of the defendant, from being struck by a plank, which had been held in place by a wire against a concrete wall in process of hardening and which fell upon the plaintiff when the wire was cut by a superintendent of the defendant without giving the plaintiff any warning that the plank was about to fall, there was evidence warranting a finding that the person who cut the wire was entrusted by the defendant with superintendence within the meaning of the statute, that the plaintiff with eight or ten other men was at work near the plank, that the superintendent had been examining the concrete wall to ascertain whether it was dry enough to take away the wires, that it had been the custom before cutting such wires to give a warning so that the men could get out of the way, and that this warning always had been given by the superintendent, and it might have been found that it was a part of his duty as superintendent to give it, that on this occasion he decided that the wall was hard enough for the wire to be cut, and, without looking to see whether any men were likely to be hurt and without giving any warning, he cut the wire himself, causing the plank to fall upon the plaintiff. The plaintiff and the others of the group of laborers with him were not within the range of vision of the superintendent when he cut the wire. It was admitted that the plaintiff was in the exercise of due care. *Held,* that the plaintiff was entitled to go to the jury, who could have found that the proximate cause of the plaintiff's injuries was not the manual act of cutting the wire, which the superintendent chose to do himself, but was the determination to cut the wire at that particular moment without giving any warning and without ascertaining whether a warning was necessary.

In an action under the employers' liability act for injuries received while in the employ of the defendant from being struck by a plank, which had been held in place by a wire against a concrete wall in process of hardening and which fell upon the plaintiff when the wire was cut by a superintendent of the defendant without giving the plaintiff any warning that the plank was about to fall, where there was evidence warranting a finding that the proximate cause of the plaintiff's injuries was the determination of the superintendent to cut the wire when he did without giving any warning and without ascertaining whether a warning was necessary, although he chose to cut the wire with his own hand instead of ordering a subordinate to cut it, the further fact appeared in evidence, that earlier in the day this superintendent had been directed by the general superintendent of the building to examine the wall and ascertain whether it was hard enough to allow the cutting of the supporting wires. *Held,* that the evidence in regard to the order of the general superintendent was immaterial, because this order, although given by a superior, was issued to one clothed with the powers of a superintendent, and left to him the exercise of his usual authority as to the way in which and the time when the wire cutting should be done.

TORT under the employers' liability act for personal injuries received on May 18, 1907, while in the employ of the defendant, a corporation. Writ dated August 13, 1907.

The declaration contained three counts, of which the first and second were waived by the plaintiff. The third count, on which the case was tried, alleged that the plaintiff's injuries were caused by reason of the negligence of some person in the service of the defendant who was entrusted with and was exercising superintendence, and whose sole or principal duty was that of superintendence.

In the Superior Court the case was tried before *Jenney*, J. The findings which were warranted by the evidence are stated in the opinion. At the close of the evidence the judge ruled that upon all the evidence the plaintiff could not recover and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*J. W. Cummings*, for the plaintiff.

*D. F. Slade*, for the defendant.

RUGG, J. This is an action of tort to recover for personal injuries. It has not been contended that the plaintiff was not in the exercise of due care. The points argued by the defendant are that one Moran in its employ was not a "superintendent, whose sole or principal duty was that of superintendence" within the meaning of these words in the employers' liability act, and that, if he was, his act, which caused the injury to the plaintiff, was not one of superintendence.

Moran was referred to as the "boss carpenter," by witnesses who also from their daily observation of him described his principal work in the common employment as giving orders to the men. His wages were twenty cents per day more than those paid his fellows. He testified that his principal work was to tell the men under him, numbering ten or fifteen or more, what to do; that he could change their work; that when he was not satisfied with a man he could send him elsewhere; that he did not labor at carpentering or only a very little, and that he "was not supposed to do any work"; that his larger pay "was for bossing the men, looking after them that they done the work right, tell them what to do," that he did not hire or discharge men, but told one McKinnan who discharged men on his request. This evidence was sufficient to support a finding that he was a statutory superintendent. *Robertson* v. *Hersey*, 198 Mass. 528. *Mattson*

v. *American Steel & Wire Co.* 200 Mass. 360. *Murphy* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 18.

The circumstances of the plaintiff's injury were these: A long plank supported and was kept upright by the pressure of a wire used to hold in place, while hardening, walls of a concrete building in process of construction by the defendant. The plaintiff, with eight or ten other men, was at work near this plank. The boss carpenter, Moran, was examining the concrete wall to ascertain whether it was dry enough to take away the wires. It had been the custom before cutting such wires to give a warning, so that the men could avoid the danger. Theretofore, this warning had always been given by Moran. On this occasion he decided that the wall was hard enough, so that the wire should be cut and, without looking to see whether men were likely to be hurt and without giving any warning, he cut the wire, whereby the plank fell upon the plaintiff. The plaintiff and his group of laborers were not within the range of vision of Moran at the time he gave and executed his own order to cut the wire. It might have been found, in view of the custom of Moran to give the warning on previous occasions, that this was a part of his duty as superintendent. *Cote* v. *Lawrence Manuf. Co.* 178 Mass. 295. The cutting of the wire was not his only act. It was preceded by a determination that with regard to the strength of the wall it ought to be cut, and that it should be cut at that particular moment without warning and without ascertaining whether warning was necessary. The line of demarcation between an act of superintendence and one of labor, when a single person in his main capacity of superintendent determines whether and when work shall be performed, and then as subsidiary to his chief employment also does some manual labor in execution of his order as superintendent, is sometimes difficult to define. One helpful, though perhaps not universal, test is to see where the proximate cause of the resulting injury would rest, if the superintendent had given his order to a subordinate, who had exactly obeyed the instructions. *Roche* v. *Lowell Bleachery,* 181 Mass. 480. In applying that test here, its incidence falls upon the direction to cut the wire without warning and not on the act of cutting.

The negligence was not in severing the wire, which was manual labor and properly done, but in giving the order to do it without first finding out whether injury was likely to result to fellow employees and in failing to give them warning, which was superintendence. It could not properly have been ruled as matter of law that the proximate cause of the injury to the plaintiff did not result from an act of superintendence by Moran. *O'Brien* v. *Look*, 171 Mass. 36, 41. *McPhee* v. *New England Structural Co.* 188 Mass. 141. *Hourigan* v. *Boston Elevated Railway*, 193 Mass. 495. *Coates* v. *Soley*, 194 Mass. 386. *Silvia* v. *New York, New Haven, & Hartford Railroad*, 203 Mass. 519. *Igo* v. *Boston Elevated Railway*, 204 Mass. 197.

This case is the converse of *Sarrisin* v. *Slater & Sons*, 203 Mass. 258, where the injury resulted from negligence in the performance of the act of manual labor by the superintendent. Upon this point the fact that Moran had been directed earlier in the morning by the general superintendent of the building to examine the wall and ascertain whether it was hard is an immaterial circumstance. This was an order by a superior, but it was issued to one clothed with the powers of a superintendent, who was left to exercise his usual authority as to the way in which and the time when the mere wire cutting should be done.

*Exceptions sustained.*