DOMINICO TUMMINELLO *vs.* FORE RIVER SHIP BUILDING
COMPANY.

Norfolk. March 16, 1910. — June 27, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence,* Employer's liability. *Agency,* Scope of authority.

In an action by a workman employed by a shipbuilding corporation against his
employer for personal injuries, there was evidence that the plaintiff was struck
in the eye by a chip of steel when he had hit the end of a reamer with a ham-
mer, and that he was ordered to do this by one H. It appeared that the defend-
ant employed about five thousand men and that its work was divided into several
divisions, that H. was the superintendent of the riveters, that the plaintiff was
not a riveter but a reamer, that a plate must be reamed before it goes as the
next step in the process to the riveters, and that it therefore was important that
the reamers should keep up with the riveters. The evidence tended to show
that H. as superintendent of the riveters had nothing to do with the reamers,
except that, when as superintendent of the riveters he needed plates for them to
work upon, he might tell the reamers to hurry up or to get to work, and certain
*statements* made by H. upon his cross-examination as to the duty of the ream-
ers to obey him when he told them to go to work might be understood to be
statements that their obligation to comply arose not from any authority in him
to give an order but from the reamers' independent duty to their employer to
keep at work. Moreover, even if H. could order the reamers to go to work so
that he could have some plates for his riveters, he was not shown to have had
any authority over the details of the manner in which they should do their work.
*Held,* that the alleged negligent order of H., directing the plaintiff to hit the
end of the reamer with a hammer, was one as to the details of the manner of
doing the work, and that the plaintiff had failed to furnish evidence for the jury
that the alleged order was within the scope of H.'s powers as a superintendent,
so that a verdict should have been ordered for the defendant.

TORT by a workman in the employ of the Fore River Ship
Building Company, a corporation, against his employer for per-
sonal injuries. Writ dated July 19, 1907.

The plaintiff's declaration originally contained three counts.
The first count alleged negligence of a superintendent in fail-
ing to warn the plaintiff of the dangers connected with the op-
eration of a reaming machine; the second count alleged a defect
in the condition of the ways, works or machinery of the de-
fendant; and the third count was at common law, alleging that
the plaintiff was injured owing to the negligence of the defend-
ant or of its servants or agents.

In the Superior Court the case was tried before *Sherman*, J. At the close of the plaintiff's evidence the judge refused to order a verdict for the defendant, and, subject to the defendant's exception, allowed an amendment to the declaration alleging, instead of a failure to warn on the part of a superintendent as alleged in the original declaration, " negligence of the defendant, or of a person in the employ of the defendant, exercising superintendence, whose sole or principal duty was that of superintendence, in directing the plaintiff to put a reamer into the machine and to hit it with the hammer," by reason of which the plaintiff was injured by a chip of steel flying from the reamer.

From uncontradicted evidence in the case it appeared that the plaintiff was an employee of the defendant at the time of the accident and that the accident happened at the works of the defendant in Quincy on May 20, 1907. The plaintiff was adjusting a reamer to an automatic machine, and in so doing struck a blow with a hammer on the point of the reamer, causing a chip to fly therefrom and hit him in his right eye. No one other than the plaintiff himself saw the accident, but it appeared by uncontradicted evidence that it happened in consequence of the plaintiff's act in hammering the reamer on its point in the way described.

The plaintiff testified that one Hines, whose duties are considered at length in the opinion, said to him, " Go ahead, put the reamer on, take a hammer, strike it on the point, and make it tight on the machine so you can work." The plaintiff continued as follows : " When he said that, I took the reamer and put it on the machine and I started to take the hammer and he had gone. He turned and gone into the shop. I don't know where he had gone to. At the same time I took the hammer to strike on the point of the reamer, and a piece of chip came off and went into my eye."

The questions of the authority of Hines to give this order, if it was an order, and of its effect if given, form the subject matter of the opinion.

The report of the judge purported to state all the material evidence on the question of liability in the case. Subject to the defendant's exception to the refusal of the judge to direct a verdict for the defendant, the judge stated that he would submit the

case to the jury as to whether Hines was an acting superintendent and whether he gave the order testified to by the plaintiff, and the questions of due care of the plaintiff and of negligence of the defendant. Thereupon the defendant submitted to a verdict of $1,750, which was agreed to by the plaintiff, and the parties requested the judge to report the case to this court for determination. If it should be found that there was no liability, judgment was to be entered for the defendant; otherwise, judgment was to be entered upon the verdict for the plaintiff.

*G. P. Beckford,* for the plaintiff.

*J. Lowell,* (*J. A. Lowell* with him,) for the defendant.

HAMMOND, J. There was evidence of the due care of the plaintiff, that Hines ordered him to hit the head of the reamer with a hammer (although this was denied by Hines), and that such was a negligent order. If therefore there was evidence that Hines was acting within the scope of his authority as a superintendent in giving that order, the case was properly submitted to the jury at least upon the fourth count; and in accordance with the terms of the report upon which the case is before us the verdict to which the defendant submitted should stand.

Assuming for the purposes of the discussion that Hines gave the order, the crucial question is whether in giving it he was acting within the scope of his authority as superintendent. It appears from the report that the defendant was engaged in shipbuilding, that its work was divided into several divisions, and there was evidence that its general work was extensive and that about five thousand men were employed in it. Hines was the superintendent of the riveters. The plaintiff was not a riveter, but a reamer; and it is not contended by him that at the time of the accident he was working as a riveter. After a plate is reamed it goes as the next step to the riveters, and it is manifest that if at any time there are no plates reamed there will be none to be riveted. It is therefore important that the reamers should keep up with the riveters. In considering the evidence as to the acts and words of Hines it is necessary to bear in mind this relation of the two kinds of work to each other.

The plaintiff testified that Hines was the boss of the riveters, that he "look[ed] if the rivets were good"; that he sometimes came into the "gang of reamers to see what they . . . [were] . . .

going to do "; that he had told him (the plaintiff) before what to do; that he had come out and seen plates made by the plaintiff and his " partner " Goldberg; that when a plate was reamed he called in another gang and got the plate and brought it into the shop of the riveter and put the rivets in.    The plaintiff further testified that on the day of the accident Hines came to him and finding him not at work because Goldberg had not come, said to him, " Well, go ahead, get to work."    " I got one plate here with six, seven or eight holes; I am in a hurry, I have got to put the rivets on; go ahead and do the reaming."    That the plaintiff tried to ream but was bothered because the reamer came out of the machine, and that on that account he had failed to ream any plate; that then Hines, who meanwhile had gone away, returned and when told by the plaintiff that he had failed to make the holes because the reamer came out of the machine said to him, " Well, go ahead, take the reamer, hit it with a hammer on the point so that it will make it tight on the machine . . . so you can work," and then went away.

On cross-examination he testified that Hines " was the boss over the riveters."    As to his relations with the reamers he further testified as follows:  " Q. Four or five weeks you had known Peter Hines ?    Did he have anything to do with the reamers or have to do with the riveters ?    A. I don't know about that.    He stand on the rivets, but he came on this gang of reamers, me and Sam Goldberg. — Q. He came to you and Sam Goldberg ? A.  On the reamers he did, yes, and called in with the plate. — Q. And called in with the plate you had to do?    A. Yes. — Q. But he stood on the riveters ?    A. He was going in the shop and coming out. — Q. On the riveters ?    A. Yes, on the rivets and reamers."

Goldberg, called by the plaintiff, testified that Hines was the " boss of the riveters," and " had nothing to do with the reamers or the men working on them."    In answer to the question whether Hines ever gave him " orders about it," he said " Sometimes when he needed the work for rivets and he came and says to do the work."

One Furtaw, called by the plaintiff, testified that at the time of the accident he himself was " boss of the reaming gang "; that the next part of the work after the reaming was the rivet-

ing, and that "it went from . . . [his] . . . charge of the reaming to . . . Hines' charge of the riveting." On cross-examination he testified that Hines had nothing to do with the reamers or with the men working on them, because he [Hines] was boss of the riveters, that Hines "had nothing whatever to do with the reaming." He further testified thus: "Q. It was not a part of his work to give any orders to the reamers? A. No, sir; not any more than to tell them to do what work he wanted done. — Q. That is, merely to tell them to go ahead with the work? A. Yes, such work as he wanted done first. — Q. But he didn't give them any instructions about the work? He is boss of the riveters? A. That is right."

Hines, called by the defendant, testified that at the time of the accident he was foreman over the riveters and had nothing whatever to do with the men working with the reamers, that although he had seen the plaintiff in the yard he did not know him personally and had nothing to do with him; and further testified as follows: "Q. Did you say anything to him about taking a plate? Did you give him a plate or speak to him about a plate with six or seven holes in it? A. No, sir. — Q. How do you remember that? How do you remember you didn't say that to him? A. Well, I — as I said before, I may have seen him standing there doing nothing, and I may have told him to go to work, something like that, and if a reamer was working outside I might tell him the work I wanted first, but that stops there."

He further testified that the reamers worked outside the riveting shop; that he used to see Goldberg, the plaintiff's partner, on the reaming machine, but had nothing to do with him, and "had nothing to do with any of the reamers or ever told them what to do or how to work."

As to his cross-examination the record, so far as material to the scope of his authority, proceeds as follows: "On cross-examination he testified that the reamers worked outside witnesses' riveting shop. — Q. After the reamers were finished the riveting began? A. Yes. — Q. And if you had a plate outside or job with some holes in it that were not reamed and wanted to use that plate, you would go out and tell Tumminello if he was there, to ream it, wouldn't you? A. I didn't have to do that. —

Q. I didn't ask you whether you had to or not, I say you would do it? A. If I had to, yes. — Q. That is, if there was a plate there that you wanted, to use next that needed to be reamed, you would say to Tumminello, ' Go and ream it,' wouldn't you? A. Yes, I would. — Q. And he would do it? A. Yes. — Q. It would be a part of his job to do what you told him to do? A. Yes, sir. — Q. Wouldn't it? A. Yes. — Q. And if you saw Tumminello or any other man standing around doing nothing, you would tell them to go to work? A. Yes. — Q. What? A. Yes, sir. — Q. That is what you were there for? A. Yes, part of my duty. — Q. Part of your duty? And you don't remember now whether you told Tumminello to go to work or not, do you? A. No, sir; I don't. — Q. You don't remember anything about it? A. No, sir. — Q. You may have, but you don't remember? A. Yes, sir."

One Gibbs, called by the defendant, testified that he himself had general supervision of the hull construction in the defendant's shipyard; that " he had nothing to do with reamers only general supervision "; that Hines was a " foreman riveter . . . and . . . had nothing to do with reamers."

Upon this evidence we are of opinion that the plaintiff has failed to show that the alleged order to strike the reamer with a hammer was within the scope of Hines's powers as a superintendent. Indeed it may well be doubted whether it was an order at all in the proper sense. While it may be true that, when Hines as superintendent of the riveters needed plates for them to work upon, he told the reamers to hurry up or get to work, yet, in view of the subdivisions of labor in this large shipyard, the importance of preserving with precision the lines of the divisions so that there shall be no clashing of authority, the fact that in the order of preparing the plates the work of the reamers is the step next preceding that of the riveters, it may well be said that the only reasonable interpretation of the evidence with reference to the language of Hines in urging at times the reamers to hurry up and get to work is not that it was in the nature of an order to be obeyed because given by him, but was rather in the nature of a suggestion that he needed the plates and that they ought to furnish them more promptly. It does not appear that he ever used such language except when

plates were needed by his gang of riveters. And even the statements made by him on cross-examination as to the duty of the reamers to obey him when he told them to go to work seem to be rather statements that their obligation to comply arose not out of any authority in him to give an order, but out of their independent duty to their employer to keep at work. And it is apparent that when in the part of the cross-examination hereinbefore quoted, in response to the suggestion of the cross-examiner that if he saw the plaintiff or any other man standing around doing nothing he would tell them to go to work and that that was a part of his duty, he said "yes," he could not have been referring to his general duty as superintendant of the riveters or of anybody else, but to what he regarded as a duty fairly owed to his employer, — to discourage idleness among the employees.

But however that may be, we think, even if he could order the reamers to go to work so that he could have some plates for his riveters, he is not shown to have any authority over the details of the manner in which they should do their work. And the alleged negligent order was merely as to such details. To hold that he could direct these details, and that his orders in this respect were to be obeyed as coming from the authority of the defendant, is wholly inconsistent with the general trend of the evidence and is not supported by any specific parts of it. It must be held that the order was not an act of Hines as superintendent. There is no liability therefore under the fourth count.

We are inclined to think that the fair construction of the record is that the case went to the jury only upon the fourth count, but as the plaintiff argues to the contrary we have examined the evidence in its bearing upon the other counts. There was no evidence to show any defect in the ways, works and machinery, and so the second count must fail. Nor do we think that there was any negligence in anticipating the possibility of such an accident and in failing to instruct the plaintiff. Therefore the first and third counts cannot be sustained. There being no liability shown, by the terms of the report the order is

*Judgment for the defendant.*