## WILLIAM CARNEY *vs.* A. B. CLARK COMPANY.

Essex. November 1, 1910. — January 3, 1911.

Present : KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability. *Statute,* Construction.

In an action by a roofer against his employer for injuries sustained in falling from the roof of a building while engaged with two others in laying " paroid " paper thereon, it appeared that the building was two hundred feet long and had a pitched roof, that its eaves were fifty feet above the ground, that the work was begun at the ridge pole and the paper was laid parallel to the ridge pole in strips three feet wide, that while the men were standing upon a bracket staging a few feet below the eaves, engaged in laying the lowest strip, a gust of wind tore the paper from the hands of the other two men stationed at each end, wrapped the paper around the plaintiff, who was stationed between the two, and hurled him to the ground. There was evidence that one of the other two men, who was acting as a temporary substitute for the superintendent, had ordered that this last strip should not be tacked temporarily to the roof as it was unrolled. *Held,* that, in view of the facts above stated and of other evidence in the case as to the velocity of the wind, the size, weight and texture of the paper and the length of the strip unrolled, the questions, whether the order was given, whether, if given, it was a negligent order and whether the injury to the plaintiff was caused thereby, were for the jury.

In an action by a workman against his employer under R. L. c. 106, § 71, cl. 2, which requires the plaintiff, in order to recover, to show negligence of a super-

intendent, whose sole or principal duty is that of superintendence, or negligence of a person acting temporarily as his substitute in his absence by authority or consent of the employer, the substitute need not be shown to be a person whose sole or principal duty is that of superintendence.

TORT by a boy, nineteen years of age when injured, against his employer for personal injuries sustained on the morning of October 25, 1907, by being thrown to the ground from the roof of one of the defendant's factories in Peabody in the manner described in the opinion. Writ dated December 3, 1907.

The sixth count of the declaration, on which alone the plaintiff relied, alleged that the plaintiff was injured by reason of the negligence of some person in the service of the defendant entrusted with and exercising superintendence, whose sole or principal duty was that of superintendence, or, in the absence of such superintendent, of a person acting as superintendent with the authority and consent of the defendant.

In the Superior Court the case was tried before *Stevens*, J., who at the close of the evidence ordered a verdict for the defendant. The plaintiff alleged exceptions.

*W. B. Sullivan*, (*W. H. Fay & J. J. Gaffney* with him,) for the plaintiff.

*J. G. Walsh*, for the defendant.

HAMMOND, J. The plaintiff, with Cleveland and Machury, all being employees of the defendant, were laying "paroid" paper on the roof of one of the defendant's buildings. The building, which was two hundred feet long, had a pitched roof, and its eaves were fifty feet above the ground. The work was begun at the ridge pole, parallel with which the paper was laid in strips three feet wide. While the men were standing upon a bracket staging a few feet below the eaves, engaged in laying the lower strip, a gust of wind tore the paper from the hands of the other two men stationed one at each end, wrapped the paper around the plaintiff, who was stationed between the two, and hurled him to the ground.

The due care of the plaintiff is admitted. There was evidence that Cleveland ordered that this last strip of paper should not be temporarily tacked to the roof as it was unrolled, and that he had authority to give such an order. In view of the evidence as to the giving of the order, as to the velocity of the wind, the

size, weight and texture of the paper, the length of the strip unrolled, the distance of the staging from the ground and the consequent seriousness of the injury likely to result to a person through a fall therefrom, the questions whether the order was given, whether, if given, it was a negligent order, and whether the injury to the plaintiff was caused thereby, were for the jury.

The only remaining question is whether the relations of the defendant to Cleveland and to the plaintiff were such as to make the defendant answerable for this negligence, or in other words whether the order of Cleveland was in law the order of the defendant.

The plaintiff relies upon R. L. c. 106, § 71, cl. 2, which holds an employer responsible to a careful employee for (1) "the negligence of a person in the service of the employer who was entrusted with and was exercising superintendence, or (2) in the absence of such superintendent, of a person acting as superintendent with the authority or consent of such employer." It is plain that the plaintiff cannot stand upon the first part of the clause. There was no evidence which would justify a finding that Cleveland was a person whose sole or principal duty was that of superintendence. It certainly was not his sole duty, and even upon the plaintiff's own testimony it was not his principal duty. In this respect the case must be regarded as one of the class of which *O'Neil* v. *O'Leary*, 164 Mass. 387, is a type.

Can the plaintiff stand upon the second part of that clause? This leads to an inquiry as to the meaning of that part. By a series of decisions beginning with *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 49, it has been constantly held by this court that by the common law of this State an employer who uses due diligence in the selection of competent and trustworthy employees and in the furnishing of proper tools and appliances is not answerable to one employee for the carelessness of another when both are engaged in the same service, or, more tersely stated, that the master is not responsible to one servant for the carelessness of a fellow servant. And this is so even although the negligent employee is a superintendent, or foreman acting within his sphere as such. *Albro* v. *Agawam Canal Co.* 6 Cush. 75. *O'Connor* v. *Roberts*, 120 Mass. 227. St. 1887, c. 270, however

changed in many important respects the common law upon this subject. The first section of that statute provided that an employer should be answerable to a careful employee for injury caused to him (1) "by reason of any defect in the condition of the ways, works or machinery . . . used in the business . . . , which arose from or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer and entrusted by him with the duty of seeing that the ways, works or machinery were in proper condition," or (2) "by reason of the negligence of any person in the service of the employer, entrusted with and exercising superintendence, whose sole or principal duty is that of superintendence"; and (3) "by reason of the negligence of any person in the service of the employer who has the charge or control of any signal, switch, locomotive engine or train upon a railroad." It will be noted that in the two particulars named in the first and third clauses respectively the person for whose negligence the employer is answerable need not be a person whose chief duty is that of superintendence, or even (in the first clause) that of caring for the proper condition of the ways, etc., or (in the third clause) that of having charge and control of the switch, etc. It is sufficient if a part, and even a small part, of his duty is the care of the ways, or of the switch, etc. But, when the subject of the liability of the employer for negligence of his employees in other respects than those thus particularly specified is reached, the provision is that the negligent employee must be a person whose sole or principal duty is that of superintendence. Briefly stated, the employer was to be held liable in any event for the act of his employee in the two respects particularly specified, whether or not the negligent employee was chiefly employed in other duties, but his liability for negligence of an employee in other respects, that is, his general liability for such negligence, was confined to the cases where superintendence was the sole or principal duty of the negligent employee. It is manifest that, while the first and third clauses might be held applicable to every employer, whether or not he had a superintendent whose sole or principal duty was that of superintendence, the second clause had no such broad application. With respect to the liability created by this clause employers were really divided into two

classes, of which the first was composed of such as had superintendents of the kind named in the clause, and the second of those who did not. As to the first class the common law was modified, while as to the second it stood as before. Such is the plain reading of the clause and such always has been the judicial construction of it. *Malcolm* v. *Fuller*, 152 Mass. 160. *O'Neil* v. *O'Leary*, 164 Mass. 387, and cases cited. *Gardner* v. *New England Telephone & Telegraph Co.* 170 Mass. 156.

Thus stood the law for seven years, at the expiration of which time this second clause was amended by adding thereto these words: " Or, in the absence of such superintendent, of any person acting as superintendent with the authority or consent of such employer." St. 1894, c. 499. And the second clause as thus amended has ever since stood. R. L. c. 106, § 71, cl. 2. St. 1909, c. 514, § 127, cl. 2.

What is the effect of this amendment? It may be suggested that its effect is to hold every employer liable, provided that with his authority or consent the negligent employee be acting as superintendent, entirely irrespective of the question whether or not superintendence be his sole or principal duty. If this be the meaning of the amendment, there was no necessity for retaining the first part of the clause ; and the plain and obvious course would have been to strike out the second clause as it originally stood and substitute in its place the words constituting the amendment. It may also be suggested that its effect was to hold the employer liable for the negligence of a person acting as a temporary substitute for a superintendent whose sole or principal duty was that of superintendence, but only in cases where the substitute himself is a person whose sole or principal duty is that of superintendence. If this be its meaning, then the amendment was useless because it made no change. Neither one of these interpretations therefore seems satisfactory. The statute as amended should, if it be reasonably practicable so to do, be so construed as to give effect to every part of it, as well that part which was allowed to stand as that part which was added.

There is no difficulty in placing such an interpretation upon it. As the clause was originally drawn, the negligent employee must have been a person whose sole or principal duty was that

of superintendence ; and unless an employer had such a superintendent he was not affected by the statute.  But it is obvious that at times this superintendent might be temporarily absent and some person for a time might act as his substitute by the authority or consent of the employer, and yet not be a person whose sole or principal duty was superintendence.  We are of opinion that this amendment applies only to such a case.  Since the amendment, as before, the only employers affected by the clause are those who have a superintendent whose sole or principal duty is that of superintendence.  The only effect of the amendment is to extend their liability so as to cover the case of the negligence of a temporary substitute of such a superintendent.  The employer who has such a superintendent is answerable for the negligence of any substitute acting by the authority or consent of the employer ; and that is so, entirely irrespective of the qualifications or general duties of the substitute.  Such an interpretation gives due effect to the clause as originally written and still retained, and proper scope for the action of the amendment.  It perfects the liability of the employers originally affected by the clause, and in the general direction originally indicated.  It is suggested by the natural meaning of the words " in the absence of such superintendent."  The word " absent," as applied to persons, primarily implies the existence of the person who for the time being is not present.  And with the possible exception of a case to be hereinafter mentioned such seems to have been the interpretation placed upon the effect of the amendment, both by the bar and the courts.  Cases have been brought upon the first part of the second clause, and the question whether it was material to show that the superintendent was one whose sole or principal duty was that of superintendence has been discussed by this court as though material.  See *Baldwin* v. *American Writing Paper Co.* 196 Mass. 402; *Fitzgerald* v. *Worcester & Southbridge Street Railway*, 200 Mass. 105 ; *Robertson* v. *Hersey*, 198 Mass. 528.  In this last case it was said by Rugg, J., that the chief question was " whether there was sufficient evidence that McArthur, by the direction of whom the compound pry was used, was a superintendent ' whose . . . principal duty was that of superintendence,' within the meaning of these words as used in . . . R. L. c. 106, § 71."  Perhaps the

case which contains the best illustration of the true interpretation of the clause as amended is *Knight* v. *Overman Wheel Co.* 174 Mass. 455. That was an action brought under St. 1887, c. 270, § 1, cl. 2, as amended by St. 1894, c. 499, for injuries suffered by the plaintiff's intestate, who at the time of the injury was an employee of the defendant. It went to the jury only on the third and fourth counts. The negligence set out in the third count was that of " some person in the service of the defendant entrusted with and exercising superintendence, whose sole or principal duty was that of superintendence"; and the negligence set out in the fourth count was that of " some person in the service of the defendant, who at the time was acting as superintendent, with the authority and consent of the defendant, in the absence of the defendant's superintendent." The negligence proven was that of one Freeman. The defendant asked for a ruling that the plaintiff could not recover on either count, — on the third because there was no evidence that Freeman was a superintendent whose sole and principal duty was that of superintendence, and on the fourth because there was no evidence that Freeman was acting as superintendent with the authority and consent of the defendant and in the absence of the defendant's superintendent. The requests were refused and in this court the refusal was upheld. Lathrop, J., in giving the opinion of the court said (p. 460) : " As to whether Freeman was a superintendent, there was no doubt that he was a foreman in charge of a gang, of which the plaintiff's intestate was a member; but this fact alone does not determine the question whether his principal duty was that of superintendence. On this point the evidence was conflicting"; and he finally says in substance that this question is for the jury. As to the fourth count he says (p. 461): " There was evidence in the case that Freeman was intrusted with the duty of superintending the work of lowering the shafting [by the sudden fall of which the plaintiff's intestate was injured] by the general superintendent of the defendant company, and that the superintendent took no charge of the work, and was not present. This brought Freeman within the purview of the St. of 1894, c. 499."

In this opinion the true construction, although not explicitly stated in full, is still clearly indicated. In an action under this

clause it is necessary to show negligence of a superintendent whose sole or principal duty is that of superintendence, or of a person acting temporarily as his substitute in his absence by authority or consent of the employer, but the substitute need not be shown to be a person whose sole or principal duty is that of superintendence. When by the consent of the employer the substitute puts·on the uniform of the original superintendent, the condition is the same as though the original and not the substitute were the wearer of the uniform. So far as *McCabe* v. *Shields*, 175 Mass. 438, contains anything inconsistent with this view it cannot stand.

In the case before us the defendant cannot be held upon the ground that Cleveland's principal duty was that of superintendence. *O'Neil* v. *O'Leary*, 164 Mass. 387, and cases cited. But we think there was evidence that the work of papering the roof was under the general superintendence of Clark, and that his sole or principal duty was that of superintendence and that by the authority and consent of the defendant acting through Clark, its chief executive officer, Cleveland was acting as the foreman or superintendent of this work in the absence of the general superintendent. Under these findings the case comes within the last half of the clause in question, *Knight* v. *Overman Wheel Co.* 174 Mass. 455, and should have been submitted to the jury.

*Exceptions sustained.*