DANIEL J. McKINNON *vs.* PITMAN AND BROWN COMPANY,

Essex.    November 7, 1912. — January 27, 1913.

Present: RUGG, C. J., BRALEY, SHELDON, & DeCOURCY, JJ.

*Negligence*, Employer's liability.

At the trial of an action by a carpenter against his employer for personal injuries, there was evidence tending to show that the plaintiff, who had begun to learn the trade of a carpenter only a year before, was directed by the foreman under whom he worked, who had called him from other work for the purpose, to get upon a wooden canopy attached to a building in order to assist in removing the canopy, that he did so without knowing or being informed how the canopy was attached to the building, that, while he was working upon the canopy, a fellow workman, seeing the canopy move, shouted to him, "Look out," and that he continued with the work, not understanding that the warning related to the condition of the canopy, but thinking that it related to danger to other persons from the throwing down of boards, that the canopy fell because it was insufficiently fastened to the building and that the plaintiff was injured. *Held*, that a finding was warranted that the plaintiff at the time of his injury was in the exercise of due care.

In an action by an employee against his employer for injuries caused by the falling of a wooden canopy attached to a building while the plaintiff was at work upon the canopy tearing it down, there was evidence tending to show that the plaintiff was inexperienced in his work, that the canopy fell because it was insecurely fastened to the building, that the plaintiff was doing his work as he was directed to by a superintendent of the defendant and within fifteen feet of him, that the superintendent, before he directed the plaintiff to get upon the canopy, knew that it formerly had been supported by columns which had been taken down and that therefore it was not likely that it was intended to be supported by its fastening to the building, and that just before the canopy fell it moved enough to attract attention, showing its insecurity. The superintendent testified that

he had told the plaintiff to keep off from a timber upon which the roof timbers of the canopy rested. *Held,* that a finding was warranted, that the plaintiff's injury was due to negligence of the superintendent.

TORT under St. 1909, c. 514, § 127, cl. 2, for personal injuries received by the plaintiff while in the employ of the defendant as stated in the opinion. Writ dated August 1, 1910.

In the Superior Court the case was tried before *Ratigan,* J. The material facts are stated in the opinion. At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*W. A. Pew,* for the plaintiff.

*F. B. Kendall,* for the defendant.

DE COURCY, J. The plaintiff seeks to recover for personal injuries alleged to have been caused by the negligence of a statutory superintendent of the defendant. There was evidence on which the jury could find the following facts.

The platform of the railroad station at Magnolia had been covered by a roof or shed that was supported on lines of posts, and all of this covering had been taken down by the defendant except the part that was connected with and extended four or five feet from the station. The roof of this remaining portion was joined to the station roof and formed a canopy over the door.

The plaintiff was sent by one Lockwood to tear down one side of this canopy. He stood upon a ladder while he removed the shingles and some of the roof, and then was directed by Lockwood to get upon the canopy while removing the remaining boards. The plaintiff then stood upon the timber known as the plate, upon which the roof timbers rested, and was prying off the rafters next to the building, by the direction and in sight of Lockwood, when one side of the canopy went down, carrying the plaintiff with it and injuring him. It then became apparent that this plate had been fastened to the station solely by six or eight nails "toed" into the corner of the building, and that the bracket underneath was attached in the same manner.

During the time when the plaintiff was standing upon the plate, one of the other workmen noticed that it moved or "worked" at the end near the building and called aloud to the plaintiff a warning to "Look out," as it might come down. Lockwood was

not more than ten or fifteen feet away at the time, and his attention was attracted by the speaker's voice.

The plaintiff was entitled to go to the jury on the issue of his due care. He was not an experienced carpenter, and had begun to learn the trade but a year before the accident. The supporting columns and all the roof of the platform with the exception of this remnant had been taken down before he came to this work. He was called from other work to this by the foreman, who wanted it to be done in a hurry. He was not informed how the plate was attached to the building, no time was allowed him to make an examination, and he had no reason to suppose that it was a place of danger. He might properly rely somewhat on the supposed knowledge of his experienced foreman, who undertook to direct specifically how the work should be performed. The warning of a fellow workman was understood by him as referring to the throwing down of the boards where they were likely to injure others, and not as relating to any danger involved in his standing upon the plate.

There was ample evidence that Lockwood was a statutory superintendent. In the absence of the general superintendent, who was not at Magnolia on the day of the accident, he had full charge of the work and of the men.

Whether the evidence would warrant a finding that by the exercise of reasonable care he would have known that the plate was a dangerous platform to support the plaintiff, and hence that he was guilty of negligent superintendence in sending the plaintiff there, is a close question. But we think that the plaintiff was entitled to go to the jury on this issue also. Lockwood knew that the plate and the roof resting thereon had been supported on columns before all but this canopy had been taken down. A carpenter with his experience well might anticipate that a plate thus supported probably would not be mortised into the building; and an inspection would have shown him that the bracket served the purpose of ornament rather than of useful construction. To send an inexperienced man to stand upon this plate with orders to tear down the structure, without making any inspection to ascertain whether it was a safe place, properly might be considered by the jury as negligent, especially when it further appeared that the superintendent was where he could have seen the movement of

the plate and have heard the warning of a fellow workman. It is significant, too, that Lockwood testified that he expressly told the plaintiff to keep off the plate, thus indicating that he believed there was danger in working there.

No defense of assumption of risk is set up in the defendant's answer. Regardless of the question of pleading, negligent superintendence under the statute is not assumed by a workman in his contract of employment.

Without further recital of the evidence in favor of the plaintiff, we are of opinion that it entitled him to have the case submitted to the jury.

*Exceptions sustained.*