WALTER HARGRAVE *vs.* AMERICAN STEEL AND WIRE COMPANY OF NEW JERSEY.

Worcester.  September 28, 1914. — October 22, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* Employer's liability.  *Practice, Civil,* Specifications.

In an action by a workman against his employer for personal injuries, the declaration as originally filed alleged negligence of a superintendent. In response to a motion of the defendant the plaintiff filed a specification alleging that the plaintiff's injuries were due to the negligence of one P entrusted with and exercising superintendence. It appeared by the evidence that P was a person acting as superintendent in the absence of the superintendent, and at the close of the evidence the plaintiff was permitted to amend his declaration by alleging

negligence of an acting superintendent of the defendant under St. 1909, c. 514, § 127, cl. 2. The judge refused to rule that the plaintiff could not recover on the declaration as amended and the specification. *Held,* that the refusal was right, because when a new ground of liability was set forth by the amendment to the declaration the allegation in regard to P contained in the specification no longer was applicable.

In an action against a corporation engaged in the manufacture of electric cables by a workman in its employ for personal injuries sustained by reason of an electric shock received by the plaintiff when in obedience to an order of an acting superintendent he was connecting a cable with a current of electricity for the purpose of testing the cable, there was evidence that the superintendent entrusted with the supervision of the work was temporarily absent and that in his absence the acting superintendent was authorized by the defendant to take charge of the work. There was *conflicting evidence as to whether the method* used by the plaintiff in making the connection was a safe and proper one, and there was evidence on which it could have been found that the acting superintendent was negligent in giving the order to make the connection for testing the cable without causing the current to be removed from an overhead wire. *Held,* that the case properly was submitted to the jury.

In an action by a workman against his employer for personal injuries alleged to have been caused by the negligence of a person acting as superintendent with the authority of the defendant in the absence of a superintendent whose sole or principal duty was that of superintendence, as provided in St. 1909, c. 514, § 127, cl. 2, the statute does not require the plaintiff to prove, in order to hold the defendant liable, that the sole or principal duty of the acting superintendent was that of superintendence.

Where, in an action by a workman against his employer for personal injuries alleged to have been caused by the negligence of a person acting as superintendent with the authority of the defendant in the absence of a superintendent, it appears that the absence of the superintendent was brief and temporary, this is not necessarily decisive against the plaintiff. It still may be the duty of the jury, as it was in the present case, to determine under proper instructions whether during such absence the acting superintendent was expected to assume the direction of the work with the authority or consent of the defendant.

A workman does not assume by his contract of employment the risk of an injury arising from the negligence of an acting superintendent.

TORT for personal injuries sustained by the plaintiff on August 8, 1910, while in the employ of the defendant. Writ dated September 24, 1910.

The first count of the declaration alleged a defect in the ways, works or machinery of the defendant; the second count alleged negligence of a superintendent; and the third count alleged a failure to furnish the plaintiff with a safe and suitable place to work.

In response to a motion of the defendant for specifications, the plaintiff filed the following specifications:

"In regard to the first count: That the defect in the condition of the ways, works and machinery connected with and used in the business of the defendant consisted in the manner of connecting the electric current with the part of the machinery upon which the plaintiff placed the wire which he was testing, so that it was not obvious whether the current was on or off.

"As to count two: That to the best knowledge and belief of the plaintiff the name of the superintendent entrusted with and exercising superintendence is Archibald Pullan, and his negligence consisted in turning on the electric current on that portion of the machinery which the plaintiff was ordered to connect with the wire which was being tested, or in leaving said current on when the plaintiff was ordered to work on said machinery.

"As to count three: That the defendant failed to furnish the plaintiff with a safe and suitable place in which to perform his work, because said place was unsafe and unsuitable on account of it not being obvious to the workmen when the electric current was on or off on the machinery with which they connected the wires they were testing."

In the Superior Court the case was tried before *Sanderson,* J. The evidence is described in the opinion. At the close of the evidence the plaintiff was permitted to amend the second count of his declaration so as to allege that his injuries were sustained "by reason of the negligence of some person in the service of the defendant, acting as superintendent with the authority or consent of his employer in the absence of the person entrusted with and exercising superintendence, whose sole or principal duty was that of superintendence."

The defendant asked the judge to make the following rulings:

"1. There is no evidence of the defendant's negligence and you must find for the defendant.

"2. On all the evidence and the pleadings the plaintiff cannot recover and you must find for the defendant.

"3. On all the evidence the plaintiff assumed the risk of injury and cannot recover.

"4. On all the evidence under count 2 as amended and the specifications, the plaintiff is not entitled to recover."

The judge refused to make any of these rulings, and submitted the case to the jury upon the second count as amended and the

specifications. The jury returned a verdict for the plaintiff in the sum of $1,792; and the defendant alleged exceptions.

*F. F. Dresser,* for the defendant.

*C. B. Perry,* for the plaintiff.

CROSBY, J. This is an action to recover for personal injuries received by the plaintiff while employed by the defendant in the testing department of its Electrical Cable Works.

Electric cables made by the defendant were tested in this department to determine whether they would carry the required voltage of electricity, and whether they were properly insulated. The testing department consisted of a room known as section 101, in which there was a motor generator for the generating of high power electrical current which was conducted by a bare wire, known as the high tension trolley, through another room known as section 102, where there were several sets of tanks filled with water. Into these tanks were placed the coils of electric cables which were to be tested, and these coils of cables in the tanks were connected with the bare wire by means of a lead, a long pole with a hook on one end and from it an insulated wire, the other end of which was bare whereby the electric current was turned into the cables. The amount of current turned into them and any defect found in them was registered upon certain devices for that purpose in section 101. At the end of the test, if a cable were found defective it was taken to another room known as section 103, called the localizing department, where an electric current was applied to the cable to discover the spot or spots in the cable where the insulation was defective. The electrical current used in section 103 for localizing was ordinarily generated by a low power generator set in a portion of section 102 that was partitioned off from the tank room. In this portion of section 102 there were also registering devices showing the amount of current which was sent over the wires for the purpose of localizing. The means of communication between section 101 and the part of section 102 that was partitioned off was by telephone. The means of communication between the partitioned room in 102 and the localizing room in 103 was by bell.

Generally the tests in room 103, known as the "localizing department," were made by means of the low power generator set in a portion of room 102 that had been partitioned off from the

tank room; but for at least a week before the accident this generator had been removed, and during this period the current for use in both tests in room 102 and room 103 came from the generator in room 101 and by means of the same overhead wire.

The plaintiff and four or five other men were employed in room 102. When a test was made in room 101 the practice was for one Parish, who was the foreman of the testing department, to conduct it. In this room Pullan worked under the direction of Parish; Parish would telephone to the partitioned part of room 102 to "get ready for the test." One of the men employed in room 102, usually Bjorn, would take the message and tell some one there to "get ready" or to "connect up;" and that person would connect the cables with the high tension bare wire. This connection was made by means of the long wooden pole called a "lead," above referred to. After these connections were made, the workman would say "All ready," and this was telephoned by one of the employees to Pullan, who would reply, "Look out," and then he would throw the switch and turn the current over the wire through the lead and into the cables. These tests were made by Parish, the foreman, unless he was absent. Up to the time when the low tension generator was removed there was ordinarily no danger from the high tension wire in making connections for testing, because it was not usually under voltage until after the connection had been made, but was what is known as a "dead wire."

For at least a week before the plaintiff was hurt, because of the removal of the low tension generator the high tension wire had been used both for making the tests in the localizing department and for those made in the department where the plaintiff was employed. There was evidence to show that on the day the plaintiff was hurt Pullan telephoned from room 101 to room 102; that Bjorn answered the call, and turned to the plaintiff and requested him to connect up for test some cables which the defendant was making for the New York Central Railroad Company; that the plaintiff assented and left the room, went into the other section of room 102, took down a lead and placed the hook upon the high tension wire overhead, with the bare end of the wire connected with the lead in his left hand, and received an electric shock, causing the injuries complained of.

The second count of the plaintiff's declaration alleges the negligence of a superintendent, and, in the specifications afterwards filed by him, the plaintiff describes Pullan as such superintendent. The case was submitted to the jury upon the second count of the declaration as amended, and upon the specifications. The second count as amended alleges that the plaintiff's injuries were caused by the negligence of an acting superintendent of the defendant under the second part of cl. 2, § 127, c. 514, of St. 1909.

1. The defendant contends that as Pullan is described in the specifications as a superintendent, and that instead of being absent he is alleged to have been present, the requirement of the statute is not sustained and therefore the plaintiff cannot recover under the second count as amended.

While the specification referred to was applicable to the second count as originally drawn, because the negligence there charged was that of a superintendent, yet when this cause of action was abandoned, and a new ground of liability was set forth by amendment allowed at the conclusion of the evidence, which amendment undoubtedly was filed to meet the evidence in the case as finally presented, this specification became wholly inapplicable to the second count as amended. The defendant's exception to the refusal of the court to give its fourth request therefore cannot be sustained.

2. The defendant contends that the plaintiff was not in the exercise of due care; that he knew, or in the exercise of reasonable care ought to have known, that the high tension wire with which he attempted to make the connection was then in use and charged with a high current of electricity. It also contends that the plaintiff's injuries were due to the manner in which he undertook to make the connection, and that the method adopted by him was careless and contrary to instructions which he previously had received.

Upon these questions the evidence was conflicting. Its weight is not for this court to determine. It could have been found that while the plaintiff knew that the high tension wire had been used for localizing tests the week before the accident, he did not know that it was so used at the time of the accident. He testified that before the accident occurred he did not know that it was in use for that purpose at any time during the day he was hurt.

While the defendant offered evidence to show that the safe and proper method of making the connections for the test was first to connect the bare end of the insulated wire attached to the lead with the wires in the cable, and then to place the hook upon the overhead wire; that the plaintiff had been instructed to make the connection in this way, and that if he had adopted this method he would not have been injured even if the overhead wire was charged with electricity, still it was for the jury to say whether these contentions were made out by the evidence.

The plaintiff testified that he never had been instructed to make the connection in that manner, and never had seen anybody else do it in that way, but that he always made it as he was attempting to make it when he was hurt, namely, by first placing the hook at the end of the lead upon the overhead or trolley wire and afterwards connecting the bare end of the overhead wire attached to the lead with the wires in the cable; and that he had been instructed so to make the connection. He further testified that he had seen Parish, the foreman, and other employees make it in the same manner.

The witness Hanson, who was employed in the testing department with the plaintiff, also testified that he always made the connection in the way testified to by the plaintiff, and that he was instructed to do it in that way. There was evidence to show that it could not be determined from the appearance of a wire whether it was charged with electricity or not.

It was a question for the jury upon the evidence and the reasonable inferences to be drawn therefrom, whether the plaintiff was in the exercise of reasonable care. *Baldwin* v. *American Writing Paper Co.* 196 Mass. 402. *Malcolm* v. *Fuller,* 152 Mass. 160.

3. Whether there was evidence of negligence of the defendant depends upon the questions:

(a) Was Parish a superintendent whose sole or principal duty was that of superintendence?

(b) If Parish was a superintendent, was he absent?

(c) Was Pullan "acting as superintendent" with the authority or consent of the defendant?

There was ample evidence that Parish was a superintendent whose sole or principal duty was that of superintendence. There

was also evidence from which it could have been found that when the plaintiff entered the defendant's employ eleven months before the accident, Parish said to him, "Mr. Pullan here is my assistant and anything what he should tell you to do you must fulfil, and also if I ask you to do things you must also do it."

It is not disputed that the order to "get ready" for the test which was made when the plaintiff was hurt and which was telephoned by Pullan to room 102, was given during the absence of Parish. Parish had left room 101 a short time before the order was given by Pullan. Parish testified that Pullan did not give orders except when he (Parish) was absent; that it was Pullan's duty to give directions on such occasions; and that the persons to whom they were so given were expected to follow such directions.

While the witness Parish testified that the current from the high tension wire had been used for localization before the accident and that "it was temporary for a month and had been in use about a week before the accident," he also testified that "under most circumstances this cable was not under voltage." If this testimony was believed, it could have been found that usually the cable was not charged with an electric current and when not charged was harmless.

The evidence shows that all tests were made by Parish as foreman of the testing department when he was present in room 101. It could have been found that when these tests were being made, because of the character of the work and the serious consequences that might follow from any employee coming in contact with the high tension wire charged with electricity, the supervision and direction of the work was entrusted by the defendant only to the foreman of this department when he was present, and that when he was absent such direction and control was vested in some other person in the service of the defendant acting in the place of and representing for the time being such foreman.

Under the statute it was not necessary for the plaintiff to prove that Pullan's sole or principal duty was that of superintendence. If Parish was found to be a superintendent within the first part of the second clause of § 127, and Pullan, in the absence of Parish, was found to be negligent while acting as superintendent with the authority and consent of the defendant, the jury would be

warranted in finding the negligence of Pullan to be the negligence of the defendant. *Carney* v. *A. B. Clark Co.* 207 Mass. 200.

While the absence of Parish on the occasion when the plaintiff was injured was brief and temporary, yet this is not decisive in the defendant's favor. It was for the jury to determine under proper instructions whether during such absence Pullan was expected to assume the direction of the test to be made with the authority or consent of the defendant. *Whalen* v. *Hugh Nawn Contracting Co.* 217 Mass. 400. *McKinnon* v. *Pitman & Brown Co.* 213 Mass. 284. *Saures* v. *Stevens Manuf. Co.* 196 Mass. 543, 549. *Baldwin* v. *American Writing Paper Co.* 196 Mass. 402. *Knight* v. *Overman Wheel Co.* 174 Mass. 455. See also *Collins* v. *Borden,* 217 Mass. 309.

4. If the jury found that Pullan was an acting superintendent within the meaning of the statute, we are of opinion that it could not be ruled as matter of law that he was not negligent. The jury could have found that when he telephoned to room 102 to "get ready" to test the New York Central wire without causing the current to be removed from the overhead wire, that it was a negligent order; and that by reason of such negligence the plaintiff, while in the exercise of due care, was injured. *Bourdeau* v. *J. J. Prindiville Co.* 213 Mass. 145. *Keating* v. *Hewatt,* 212 Mass. 577. *Holder* v. *Massachusetts Horticultural Society,* 211 Mass. 370. *Carney* v. *A. B. Clark Co.* 207 Mass. 200. *Tumminello* v. *Fore River Ship Building Co.* 206 Mass. 311. *Mooney* v. *Benjamin F. Smith Co.* 205 Mass. 270. *O'Brien* v. *Look,* 171 Mass. 36.

5. The contention of the defendant that the plaintiff assumed the risk of injury has not been set up in the answer; yet, aside from the question of pleading, an employee, by reason of his contract of employment, does not assume the risk of injury which arises from the negligence of a superintendent, or of that of an acting superintendent, under the employers' liability act. *Meagher* v. *Crawford Laundry Machinery Co.* 187 Mass. 586. *Keating* v. *Hewatt,* 212 Mass. 577. It follows that none of the defendant's requests for rulings could have been given.

*Exceptions overruled.*